In re Marshall Roland KAMMERUD, Marianne Aldridge Kammerud, Debtors.

STATE OF OHIO Ohio STUDENT LOAN COMMISSION, Plaintiff,

v.

Marshall Roland KAMMERUD, et al., Defendants.

Bankruptcy Nos. B–2–78–1529, B–2–78–1530.

United States Bankruptcy Court, S. D. Ohio, E. D.

April 21, 1980.

Philip Q. Zauderer, Sp. Counsel to the Atty. Gen. of the State of Ohio, Columbus, Ohio, for plaintiff.

Craig M. Stewart, Carlile, Patchen, Murphy & Allison, Columbus, Ohio, for debtors-defendants.

## OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY

ROBERT J. SIDMAN, Bankruptcy Judge.

This matter is before the Court on the complaint filed by the State of Ohio, Ohio Student Loan Commission (OSLC) to determine the dischargeability of certain obligations owed OSLC by Marshall and Marianne Kammerud, husband and wife and Chapter XIII debtors herein. The matter was tried to the Court on its merits and has been submitted to the Court for decision.

The Court finds the following facts. On October 7, 1974, and on February 24, 1977, Marianne Kammerud filed separate applications with the OSLC seeking student loans. Each of these applications was granted and monies were advanced for certain educational expenses of Marianne Kammerud. The principal amount of the October, 1974 loan was $1,360.00 and the principal amount of the February, 1977 loan was $1,140.00. Marianne Kammerud then filed a third application with OSLC seeking a loan of $1,360.00 in October of 1977. This loan was also granted. The present balance owed by Marianne Kammerud on these three obligations totals $3,984.14. Marshall Kammerud filed his own application with the OSLC on April 13, 1977, seeking a loan of $2,500.00 for his educational expenses. The loan was granted and there is a present balance owed on this loan of $2,542.29. Each of the above referenced loans was made by the City National Bank and Trust Company, and, pursuant to a contract with the United States Government and with certain lenders, the OSLC is required, upon default, to repurchase these notes from the lenders. The OSLC, after default by the Kammeruds and repurchase of these notes, unsuccessfully attempted to collect the amounts owed from the Kammeruds.

The financial difficulties encountered by the Kammeruds have caused them to file a pending Chapter XIII proceeding. The Chapter XIII petition was jointly filed on July 25, 1978. The plan of the Kammeruds, calling for payment of $300 per month and a 45% dividend to unsecured creditors, was confirmed by the Court on August 29, 1978. The complaint to determine dischargeability was filed by the OSLC on December 22, 1978. The trial of this adversary proceeding was held on April 9, 1979, and, after certain briefs were prepared and filed by the parties, the issues were submitted for Court determination.

Mr. Kammerud is forty-three years of age and has ten years of post high school education. He has earned an undergraduate degree in English Literature, holds a masters degree in Urban Studies, and has taken other graduate courses in the field of Theology. He is presently employed by the State of Ohio Department of Public Welfare at an annual wage of approximately $15,000. He has, in the past, taught, on a part-time basis, at Urbana College (Ohio), although he had no second job at the time of trial. His earnings for calendar year 1977 were $17,500.

At the time of trial, Mrs. Kammerud was unemployed, although she had been looking for employment. Mrs. Kammerud is under a doctor's care, and both the Kammeruds testified that they are having difficulty meeting current living expenses and making payments to the Chapter XIII trustee under the terms of their confirmed Chapter XIII plan. The Kammeruds have two teenaged children.

The issues to be resolved by the Court are (1) the applicability of the nondischargeability provisions of § 439A of the Higher Education Act, as amended in 1976, 20 U.S.C. § 1087-3, to the specific loans scheduled by the Kammeruds, (2) the effect of the repeal of 20 U.S.C. § 1087-3 by the Bankruptcy Reform Act of 1978, 11 U.S.C. § 317 vis-a-vis the dischargeability of these loans, and (3) the merits of the assertion by the Kammeruds that repayment of these loans would be an undue hardship.

■ The issue of the applicability of § 439A of the Higher Education Act, as amended in 1976, 20 U.S.C. § 1087-3, was raised by a motion to dismiss filed by the attorney for the Kammeruds during the course of the trial. The motion was premised on the fact that the OSLC had failed to prove the statute under which the particular loan in question was insured, and thus had failed to bring the complaint within the nondischargeability provisions of § 439A of the Higher Education Act. The complaints filed in these cases do allege that they arise under the cited section of the Higher Education Act. Those allegations are denied in the answer filed by the defendants in these cases. While the precise statutory reference was not given in testimony before the Court, a representative of the OSLC did testify that it purchased notes pursuant to a contract existing between it and the federal government in connection with insured educational loans. This Court will not dismiss this complaint based upon the failure of the plaintiff in this case by oral testimony, to specifically prove the statute under which it is proceeding in order to obtain the declaration of nondischargeability. In this Court's estima-

tion, that matter is not subject to legitimate dispute, and the Court will not presume absence of oral testimony on the point to be fatal to the complaint. The motion to dismiss is hereby overruled.

Turning to the substantive issues in this case, this Court must determine the law applicable to a nondischargeability question in light of certain legislative enactments. Specifically, this Court must ferret out the interplay between the enactment of the nondischargeability provisions of the Higher Education Act, 20 U.S.C. § 1087-3, the presumed incorporation of that Act into the nondischargeability provisions of § 17 of the Bankruptcy Act of 1898, 11 U.S.C. § 35, and the repeal of the nondischargeability provisions of the Higher Education Act by the Bankruptcy Reform Act of 1978, 11 U.S.C. § 317, made effective through Pub.L. 95-598, Title IV § 402(d), 92 Stat. 2682 (1978). The Court must further consider the effect, if any, of the savings clause found in Title IV of the Bankruptcy Reform Act of 1978, Pub.L. 95-598 § 403(a), 92 Stat. 2683 (1978). Also relevant as background is the recent amendment to § 17(a), clause 9, of the Bankruptcy Act of 1898, 11 U.S.C. § 35(a), as amended August 14, 1979, Pub.L. 95-56, 93 Stat. 387 (1979) (repealed as of October 1, 1979, by the Bankruptcy Reform Act of 1978), which reinstated the nondischargeability provision for student loans, except for undue hardship, where the loans were scheduled within five years of the commencement of the repayment period and the proceedings were commenced under the Bankruptcy Act of 1898 between August 14, 1979, the date the amendment became effective, and October 1, 1979, the effective date for the Bankruptcy Reform Act of 1978 with its similar provision in 11 U.S.C. § 523(a)(8).

These cases were commenced as Chapter XIII proceedings on July 25, 1978. The complaint to determine dischargeability was filed on December 22, 1978, and tried to the Court on April 9, 1979. Each of these dates must be examined to determine the applicable law at any point in time in respect to the nondischargeability of student loans.

Section 439A of the Higher Education Act, as amended in 1976, stated:

"(a) A debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such discharge is granted after the five-year period (exclusive of any applicable suspension of the repayment period) beginning on the date of commencement of the repayment period of such loan, except that prior to the expiration of the five-year period, such loan may be released only if the court in which the proceeding is pending determines that payment from future income or other wealth will impose an undue hardship on the debtor or his dependents.

"(b) Subsection (a) of this section shall be effective with respect to any proceedings begun under the Bankruptcy Act on or after September 30, 1977." 20 U.S.C. § 1087–3.

The Bankruptcy Reform Act of 1978, enacted on November 6, 1978, specifically repealed § 439A of the Higher Education Act. The repeal is contained in Public Law 95–598, Title III, § 317, 92 Stat. 2678 which states:

"Section 439A of part B of title IV of the Higher Education Act of 1965 (20 U.S.C. 1087–3) is repealed."

The Bankruptcy Reform Act of 1978 further provided that the repeal made by § 317 was effective as of November 6, 1978, the date of enactment of the Bankruptcy Reform Act. This date of enactment is contained in Public Law 95–598, Title IV, § 402(d), 92 Stat. 2682 (1978) which states:

"The amendments made by sections 217, 218, 230, 247, 302, 314(j), <u>317</u>, 327, 328, 338, and 411 of this Act shall take effect on the date of enactment of this Act." (Underscoring added.)

November 6, 1978, is therefore the effective date for the repeal of § 439A of the Higher Education Act.

In addition, the Bankruptcy Reform Act of 1978 contained a savings clause. Pub.L. 95–598, Title IV § 403(a), 92 Stat. 2683 (1978). Although the construction of § 403(a) is critical for the determination of dischargeability in cases where all the focal dates occur between November 6, 1978, and August 14, 1979, this Court will not construe the effective date of the savings clause in light of further determinations set forth in the course of this opinion.

The primary issue, as seen by this Court, is the determination of which date governs the law to be applied on a dischargeability issue. There are decisions which hold that the law governing questions of dischargeability is the law in force at the time the original petition is filed, at the time the issue of dischargeability is raised, and at the time the order of discharge is entered. *See United States of America v. Carpenter (In Re Carpenter)*, 5 B.C.D. 577 (D.Colo., Feb. 8, 1979), *Coordinating Board, Texas College and University System v. Espronceda (In the Matter of Espronceda)*, 5 B.C.D. 267 (S.D.Tex., April 18, 1979), *Wisconsin Higher Educational Aids Board v. Utterback (In Re Utterback)*, 1 B.R. 199 (Bkrtcy. N.D.Tex., 1979), *New York State Higher Education Services Corp. v. Amadori (In Re Amadori)*, 5 B.C.D. 187 (W.D.N.Y., April 5, 1979).

■ For the reasons cited below, this Court holds that the better reasoned view is that the controlling date for determining the law to be applied to questions of dischargeability is the date upon which the original petition in bankruptcy was filed. The law in force on that date determines which debts shall be dischargeable at the time such an issue might ultimately be determined.

■ The Court cites with approval the decisions in other courts which have also concluded that the law in force on the date the petition is filed governs which debts will be dischargeable. The bankruptcy court of Colorado observed that statutes do not operate retroactively in substantive matters unless so expressly stated. There is no express statement of retroactivity in the section of the Bankruptcy Reform Act of 1978 which repeals § 439A of the Higher Education Act [Pub.L. 95–598, Title III,

§ 317, 92 Stat. 2678 (1978)] and therefore, the filing of the bankruptcy petition acts as an application for discharge based upon dischargeability as of the time the petition was filed. *United States of America v. Carpenter (In Re Carpenter)*, 5 B.C.D. 577 (D.Colo., Feb. 8, 1979).

In an analogous situation, a bankrupt had initially filed as a debtor under Chapter XIII prior to the enactment of the nondischargeability provision of the Higher Education Act. By the time the question of dischargeability arose, the bankrupt had converted to a liquidation bankruptcy under Chapter VII and the nondischargeability provision had been added to the Higher Education Act. Section 439A, Higher Education Act, as amended in 1976, 20 U.S.C. § 1087-3. Bankruptcy Judge Charles N. Clevert held that the student loan was dischargeable because the law in effect at the time of the filing of the original Chapter XIII petition determined the applicable law at the time the discharge was to be determined. *Wisconsin Higher Educational Aids Board v. Brown (In the Matter of Brown)*, 4 B.C.D. 207 (E.D.Wis., April 17, 1978).

This Court is further aware that some courts have considered the applicability of the savings clause found in the Bankruptcy Reform Act of 1978 before concluding that the law in effect at the time of the filing of the bankruptcy petition governed the debts which may be barred from discharge. The savings clause states:

"(a) A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted." Pub.L. 95-598, Title IV, § 403(a), 92 Stat. 2683 (1978).

In considering the effect of this savings clause, a bankruptcy court in Nevada found that the savings clause saved § 439A of the Higher Education Act, as amended in 1976, 20 U.S.C. § 1087-3 as the applicable law in those cases commenced under the Bankruptcy Act and preserved the right of discharge in all proceedings begun under the Bankruptcy Act as that right existed at the time the petition was filed. *Wisconsin Higher Educational Aids Board v. Edson (In the Matter of Edson)*, 4 B.C.D. 1191 (D.Nev., January 22, 1979). Furthermore, the Bankruptcy Reform Act of 1978 had no retroactive effect upon cases commenced before its date of passage, and the savings clause in the Bankruptcy Reform Act of 1978, Pub.L. 95-598, Title IV, § 403(a), 92 Stat. 2683 requires that the law in effect at the time the proceeding was commenced (the petition date for any voluntary proceeding) be applied in a bankruptcy case pending at the time Public Law 95-598 was enacted. *Pennsylvania Higher Education Assistance Agency v. Weinstein (In Re Weinstein)*, 5 B.C.D. 503 (E.D.Pa., June 26, 1979).

In a situation where the loan was nondischargeable at the time the petition was filed, at the time the order of discharge was entered without objection and at the time of the trial on an exception to discharge, the loan remained nondischargeable even though the repeal of § 439A of the Higher Education Act, as amended in 1976, 20 U.S.C. § 1087-3, occurred before the decision was rendered. Using the legislative history for Pub.L. 95-598 to buttress its holding, the bankruptcy court implied that, by analogy, contrary to the usual situation where an appellate court will apply the changed law where the law has changed in the interim between the trial court decision and the hearing on appeal, the dates of the filing of the petition and of securing the discharge would be the relevant dates in this particular situation and the loan would remain nondischargeable. *New York State Higher Education Services Corp. v. Kohn (In the Matter of Kohn)*, 5 B.C.D. 419 (S.D.N.Y., June 20, 1979). The changed law will not be applied where to do so "would result in manifest injustice or there is statutory direction or legislative history to the con-

trary." *Bradley v. Richmond School Bd.*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). The legislative history of the nondischargeability provisions for student loans indicates that it was not the intent of Congress to provide nondischargeability for debtors whose loans were governmentally insured and whose petitions had been filed before the effective date of the repeal of § 439A of the Higher Education Act, as amended in 1976, 20 U.S.C. § 1087-3. *New York State Higher Education Services Corp. v. Kohn (In the Matter of Kohn)*, 5 B.C.D. 419 (S.D.N.Y., June 20, 1979).

Other cases in other areas have sometimes held that the date of the entry of the order of discharge controls. *See New York State Higher Education Services Corp. v. Amadori (In Re Amadori)*, 5 B.C.D. 187 (W.D.N.Y., April 5, 1979); *Pennsylvania Higher Education Assistance Agency v. Johnson (In Re Johnson)*, 5 B.C.D. 532 (E.D. Pa., June 27, 1979); and *New York State Higher Education Services Corp. v. Christopher (In the Matter of Christopher)*, 5 B.C.D. 214 (W.D.N.Y., April 5, 1979) (7 cases consolidated). These courts focus on jurisdictional questions as they relate to repealed provisions of the Bankruptcy Act. Many of the precedents cited as support for this result are cases decided before the 1938 Chandler Act amendments to the Bankruptcy Act of 1898. In these earlier cases a separate application for discharge was necessary, and in that context, it seems reasonable that the law in effect at the time the application for discharge was filed by the debtor should govern. Since the 1938 amendments to the Bankruptcy Act of 1898, 11 U.S.C. § 32, the adjudication of a person as a bankrupt has operated as an application for discharge, and adjudication takes place automatically upon the filing of a voluntary petition. Thus, consistent with pre-Chandler Act case law to the effect that the date of application for discharge governs the law applicable to the issues so raised, the date of a voluntary petition is the crucial date for determining the law to be applied to discharge questions. And this is no less true where the original petition was filed under the auspices of the now repealed Chapter XIII. See 11 U.S.C. § 1067(2) (now repealed). That statute clearly provided that even if a Chapter XIII debtor were adjudicated a bankrupt during the pendency of his Chapter XIII case, the subsequent liquidation proceeding was to be conducted as if the original petition had been a voluntary petition in bankruptcy and not a Chapter XIII petition. A Chapter XIII petition, like a voluntary petition in bankruptcy, operates as an application for discharge. No separate application need be made, unless a hardship discharge under the provisions of 11 U.S.C. §§ 1060-61 (now repealed) is requested.

The other line of cases relied on by the courts which have held that the date of entry of the order of discharge controls the issue of dischargeability deals with the 1960 amendments to § 14(c)(3) of the Bankruptcy Act of 1898 (Pub.L. 86-621, 86th Cong. 2d Sess., 74 Stat. 408, July 12, 1960). This amendment narrowed the bar to discharge as a result of a false financial statement to false financial statements "made in connection with a bankrupt's business". At the time this amendment was enacted, many cases were pending where individual consumer debtors had trials pending on objections to discharge based on allegations of false financial statements. The purpose of the 1960 amendment to § 14(c)(3) of the Bankruptcy Act of 1898 was remedial and designed to correct the abuse of this exception as to consumer bankrupts. Therefore, many courts, for strong policy considerations, interpreted the amendment liberally in favor of consumer bankrupts and applied the law as amended to the discharge exception, allowing the bankrupt to secure a discharge even over allegations of false financial statements. It should be noted also that § 17(a)(2) of the Bankruptcy Act of 1898 was amended at the same time to provide that certain debts would be nondischargeable by reason of such false financial statements. Thus, not only did the remedial purpose of Congress affect the outcome of these cases, but also the existence of another remedy under newly-amended § 17

weighed in favor of the more restrictive application of § 14 objections to discharge, even to bankrupts whose petitions had pre-dated the amendment. No such remedial purpose exists in the repeal of § 439A of the Higher Education Act. The enactment of the nondischargeability provision by the 1976 amendments to § 439A of the Higher Education Act was designed to correct a perceived abuse on the part of bankrupts who obtained student loans and filed bank-ruptcy soon after the commencement of the repayment period. No strong policy exists such as would overcome the selection of the date of the filing of the petition as the date governing the substantive law to be applied for the entire proceeding.

*In Re Elizabeth Ann Matthews*, 3 Bankr. L.Rep. (CCH) ¶ 67,049 (D.Conn., February 6, 1979), cited by the defendant, found that the debtor had shown undue hardship such that the debtor's student loans should be discharged. Although the Court went on to hold that student loans were dischargeable between November 6, 1978, and October 1, 1979, it did not actually consider which date was the critical date for determining dis-chargeability in a bankruptcy proceeding.

█ This Court, for reasons stated above, holds that the petition date is controlling and is, therefore, not persuaded by the *Mat-thews* holding. The date upon which the petition is filed is the only date not subject to administrative scheduling variations or influenced by the case load in any particu-lar court. This Court holds that the sub-stantive law governing discharge in a bank-ruptcy case is chosen by the debtor at the first time in the proceeding he can exercise choice—when he files his petition. Al-though he may not have a vested right to have the law remain as it was when he filed his petition, absent a clear legislative intent to benefit the bankrupt, such as was indi-cated in the 1960 amendments to § 14(c)(3) of the Bankruptcy Act of 1898 (Pub.L. 86–621, 86th Cong. 2d Sess., 74 Stat. 408, July 12, 1960), the law in effect at the time the debtor files his petition controls the dis-chargeability of the debts he schedules on his petition.

The Court is aware of *State of Ohio v. King (In Re King)*, 5 B.C.D. 417 (S.D.Ohio, W.D., July 5, 1979). King's petition was filed on September 6, 1978, and the com-plaint to determine dischargeability was filed on March 15, 1979. Bankruptcy Judge Perlman then interpreted the repealer of § 439A of the Higher Education Act (Bank-ruptcy Reform Act of 1978, Pub.L. 95–598, Title III, § 317 and Title IV, 402(d), 92 Stat. 2678 and 2682), as effective on November 6, 1978. He did not, however, find that the savings clause in the Bankruptcy Reform Act of 1978, Pub.L. 95–598, Title IV, 403(a), 92 Stat. 2683 (November 6, 1978) became effective before October 1, 1979. There-fore, the Court reasoned that there was no nondischargeability provision in the Higher Education Act which was in existence when the Ohio Student Loan Commission filed its complaint to determine dischargeability. The Court seemed to be saying that, re-gardless of the date on which the petition was filed, since no nondischargeability stat-ute existed at the time of the trial on the issue of discharge, the Court could not hold that the student loan was nondischargeable. The Court, however, went on to indicate that it was following its own precedent set in *University of Cincinnati v. Harris (In Re Jones)*, 5 B.C.D. 593 (S.D.Ohio, W.D., May 11, 1979) in which the student loan was likewise held to be dischargeable. There are important factual differences between *Jones* (aka *Harris*) and *King*, however. Jones' petition was filed on November 28, 1978, after the repealer of 20 U.S.C. § 1087–3 became effective. In that situa-tion, where both the petition and the dis-chargeability complaint were filed after the repealer, there could be little support for holding the loan to be nondischargeable un-less the savings clause is seen as saving 20 U.S.C. § 1087–3 for all petitions filed before October 1, 1979, when the Bankruptcy Re-form Act of 1978 became effective in most respects. The *King* case does not state that the bankrupt's petition was filed before No-vember 6, 1978, and the Court does not seem to consider the implication of this difference.

In relating the cases cited above to the present case under consideration, it becomes evident that the facts in this case do not require dealing with the issue of the effect of the savings clause on petitions filed between November 6, 1978, and August 14, 1979. This case can be decided under the law in existence at the time the petition was filed on July 25, 1978, since nothing in the repealer or the savings clause need be interpreted as retroactive. At the time the Kammeruds' petitions were filed, any student loan scheduled within five years of the commencement of its repayment obligation was nondischargeable as being within § 439A of the Higher Education Act, 20 U.S.C. § 1087–3, as it existed at that time. Therefore, the Kammeruds' loans would be nondischargeable unless the undue hardship exception could be proved. Once it is decided that the date of the petition is the controlling date and that the debtor chose the law applicable to his case at that time, absent a showing of strong legislative intent to the contrary, then a subsequent repeal does not change this, even if the repeal were effective when the Ohio Student Loan Commission's Complaint to determine dischargeability was filed on December 22, 1978.

This Court, therefore, after a thoughtful consideration of many of the decisions on this question, has concluded that the law in effect at the time when the petition in bankruptcy (or Chapter XIII petition) is filed is the controlling law for the dischargeability of student loan debts scheduled on that petition. *See State of Ohio v. Hardiman (In Re Hardiman)*, No. B2–78–1942 (S.D.Ohio, February 8, 1980) (Kelleher, B.J.) (unreported). Since the Kammeruds' petitions were filed on July 25, 1978, at a time when student loans were nondischargeable if scheduled on a bankruptcy petition within five years of the commencement of their repayment date, this law controls their entire bankruptcy proceeding. The student loans of the Kammeruds are, therefore, nondischargeable in this proceeding unless the debtors can show that an undue hardship will result if repayment of these debts is not forgiven.

The Higher Education Act has provided for discharge of otherwise nondischargeable student loans if repayment would create undue hardship for the debtor. 20 U.S.C. § 1087–3, as amended in 1976 (now repealed). The Higher Education Act does not, however, define what is meant by undue hardship. *New York State Higher Education Services Corp. v. Kohn (In Re Kohn)*, 5 B.C.D. 419 (S.D.N.Y.1979). Some courts, in attempting to define undue hardship in the context of the facts of each individual case, have, however, repeatedly considered certain factors. At least one court has labelled three tests, two of which are required to be met before an undue hardship discharge can be granted. *Pennsylvania Higher Education Assistance Agency v. Johnson (In Re Johnson)*, 5 B.C.D. 532 (E.D.Pa., June 27, 1979).

The mechanical test for undue hardship considers the debtor's employment status, his future employment and income prospects, his skills and educational level and any factors which relate to his performance in these areas, such as his health, the marketability of his skills or his responsibility for small dependent children. *New York State Higher Education Services Corp. v. Moore (In the Matter of Moore)*, 4 B.C.D. 791 (W.D.N.Y., August 17, 1978; *In Re Elizabeth Ann Matthews*, No. B–78–390 (D.Conn., February 6, 1979) (unreported but digested at 3 Bankr.L.Rep. (CCH) ¶ 67,049). If an analysis of the facts shows that this mechanical test has been met, the court may then further require demonstration that good faith has been shown through minimization of expenses by the family unit, maximization of resources by the debtor's use of his skills to become as fully employed as possible, and by the debtor's effort to obtain employment. If the mechanical test is met, but the good faith requirement has not been shown, then satisfaction of a policy test formulated as the § 439 test may be required. *Pennsylvania Higher Education Assistance Agency v. Johnson (In Re Johnson)*, 5 B.C.D. 532 (E.D. Pa., June 27, 1979). This test is based on

the policy embodied in § 439A of the Higher Education Act, as amended in 1976, 20 U.S.C. § 1087–3 (now repealed). It considers the amount and percentage of the debtor's indebtedness which are represented by the student loans and the benefit derived from the education as these factors relate to the abuse of the student loan program which prompted the enactment of the five-year bar to discharge found in 20 U.S.C. § 1087–3 (now repealed). *Johnson*, supra, at 542.

■ The requirements of the good faith test and the § 439A policy test need be invoked only where the debtor has qualified for undue hardship based upon the mechanical hardship test. Therefore, if the mechanical test is not first met, the other two tests need not be considered. Also coexistent with all these tests is the equitable power of the bankruptcy court and the discretion granted to the bankruptcy court on the hardship question. *In Re Reichley*, No. 75–2590 and 75–2591 (S.D.Ohio 1979) (unreported but digested at 3 Bankr.L.Rep. (CCH) ¶ 67,216).

Consideration of the mechanical hardship for both Marshall and Marianne Kammerud, the debtors herein, demands an analysis of the ability of these debtors to become employed and to maintain employment as well as consideration of their education and skill levels, their health, their responsibilities for small children and any non-wage income which they may possess.

Marshall Kammerud is 43 years old and has been employed by the State of Ohio Department of Public Welfare for at least five years at an annual salary of approximately $15,000. Marianne Kammerud is 41 years old and, although she was not employed at the time of the trial on this complaint to determine dischargeability, she has not entered into the record any evidence of nonemployability. She therefore must be considered as employable. In fact, it was stated at the trial that she was actively seeking employment. The Court also notes that there are no small children needing daily care to impede this search for employment.

Both Marshall and Marianne Kammerud have substantial education past the bachelor's degree level. Marshall Kammerud has a master's degree in Urban Studies as well as a theology degree from Boston University. Marianne Kammerud's student loans were all incurred in order to allow her to pursue graduate studies. Therefore, both debtors, by their educational levels, should be able to obtain and retain gainful employment. Marshall Kammerud's work, by his testimony, uses his urban studies skills.

The debtors' monthly budget, submitted to the Court at the time of the confirmation of their Chapter XIII plan, does not include any luxuries or unneeded expenses. The record also shows that the loss of a second income by Marshall Kammerud has meant that less than the proposed amount has actually been available to the family during the pendency of their Chapter XIII plan. The Court sympathizes with the debtors' desire to help their son with his education, to provide counseling and tutoring help for their daughter and to schedule needed dental work and clothing purchases. The Court, however, must take judicial notice of the sale of the debtors' residence subsequent to the trial date on this matter. This sale has provided the debtors with realization of their equity in the home which has enabled them to pay the remaining balance of their wage earner plan as well as to retain funds for some of their other needs. Now that the Chapter XIII plan has been substantially completed, the debtors have approximately $300 available on a monthly basis which was previously being paid to the Chapter XIII trustee. Even with allowance for a high rate of inflation, for their increased medical expenses and for abnormally high car insurance premiums, the Kammeruds should be able to repay this debt to the Ohio Student Loan Commission over an extended period without causing the family's standard of living to be reduced to a poverty level.

Nor have these debtors been penalized by having selected a Chapter XIII plan rather than a Chapter VII liquidating bankruptcy. Their payment of 45% of the debt to OSLC

during the Chapter XIII plan means that only 55% of this claim or approximately $3,612.00, remains to be paid. All of the other debts listed on the debtors' Chapter XIII statement will be discharged with 100% of their secured claims and 45% of their unsecured claims having been paid. As a result of the Chapter XIII proceeding, the financial situation of these debtors should be greatly improved.

The Court finds that the test which must be met here is not simply one of financial adversity, but one which requires unique circumstances which make it unlikely that the debtors will be able to repay their loans or make it likely that repayment would subject them to extreme difficulties in their attempt to repay. *New York State Higher Education Services Corp. v. Kohn (In Re Kohn)*, 5 B.C.D. 419, 424 (S.D.N.Y. 1979).

This mechanical test for undue hardship has not been met by these debtors and, therefore, there is no need for this Court to consider whether the good faith requirement or the § 439A policy test has been satisfied. The Court therefore will not consider the factors heretofore listed for these other two tests.

It is the finding of this Court that, although repayment of these student loans will present some hardship to the debtors, such repayment will not present an undue hardship within the meaning of § 439A of the Higher Education Act, as amended in 1976, 20 U.S.C. § 1087–3 (repealed November 6, 1978). Nor will it seriously impair their "fresh start" provided for in the Bankruptcy Act.

Based upon these findings, the Court hereby determines that the debts to the Ohio Student Loan Commission, representing student loans incurred by Marshall and Marianne Kammerud, are not dischargeable in bankruptcy. While two separate adversary proceedings were commenced by the Ohio Student Loan Commission, one against Marshall Kammerud and one against Marianne Kammerud, these proceedings were jointly tried to the Court and jointly decided by this Opinion and Order. However, separate judgments shall enter against the Kammeruds based upon their respective individual remaining liability on separate student loans. Separate judgment entries shall be prepared by plaintiff's counsel, signed by defendants' counsel, and submitted to the Court within ten (10) days of the date of this Order, such judgments specifying the separate liability of Marshall Kammerud and Marianne Kammerud on their respective student loans.

IT IS SO ORDERED.