**In re Linda Carol BAKKUM, Debtor.**

**Linda Carol BAKKUM, Plaintiff,**

**v.**

**GREAT LAKES HIGHER EDUCATION CORP., Defendant.**

**Bankruptcy No. 89–0291.
Related No. 89–00607.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Jan. 7, 1992.

Jerry W. Lee, Bowling Green, Ohio, for plaintiff.

Lloyd J. Blaney, Madison, Wis., for defendant—Great Lakes Higher Educ. Corp.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial on the Complaint to Determine Dischargeability of Debt. At the Trial, the parties had the opportunity to present the arguments and evidence they wished the Court to consider in reaching its decision. The Court has reviewed the evidence and arguments presented, as well as the entire record in this matter. Based upon that review, and for the following reasons, the Court finds that the debt in the amount of Thirty-six Thousand Six Hundred Seventy Dollars and Twenty-nine Cents ($36,670.29) should be nondischargeable.

## FACTS

Linda Carol Bakkum [hereinafter "Bakkum"], Debtor, received her Bachelors degree in Sociology from Mankato State University, Mankato, Minnesota in 1983 and her Masters degree in Sociology from Bowling Green State University, Bowling Green, Ohio in 1988. To help defray her educational costs, she borrowed money from lending institutions totaling Seventy-five Thousand Three Hundred Eleven Dollars and Seventy-four Cents ($75,311.74). Great Lakes Higher Education Corp. [hereinafter "Great Lakes"], Defendant, was assigned the portion of the debt owed to Student Loan Marketing Association. Her total amount of indebtedness to the Defendant was Thirty-six Thousand Six Hundred Seventy Dollars and Twenty-nine Cents ($36,670.29).

Bakkum filed for Bankruptcy on March 8, 1989. At that time, she was in default on her loan with Great Lakes. On October 25, 1989, she filed this complaint seeking to have her student loan obligation discharged. Bakkum contended it would be an undue hardship for her to have to pay back the loans. Great Lakes disagreed, contending that the Debtor was a single, healthy young woman with no dependents, who will not be subjected to any undue hardship if she is required to re-pay her student loan debt.

At Trial, Bakkum testified that she was Twenty-nine (29) years of age and in good health. She stated that she was single, had no dependents, and lived alone. Bakkum, in addition to her degrees, was qualified to teach Sociology.

She "netted" One Thousand Two Hundred Fifty-six Dollars and Ninety Cents ($1256.90) a month from her job as a Counselor in Tutorial Services at Bowling Green State University. She had worked at Bowling Green State University for over Two (2) years. Bakkum also worked part-time as an instructor at the University of Toledo, earning Three Hundred Eighty-nine Dollars and Twenty Cents ($389.20) a month take-home pay.

Bakkum further testified that the following reflected her monthly budget:

| | |
|---|---|
| INCOME | $1646.10 |

| EXPENSES | |
|---|---|
| Rent | $475.00 |
| Automobile payments | 214.11 |
| Automobile insurance | 44.00 |
| Phone bill | 60.00 |
| Electric bill | 40.00 |
| Gas bill | 25.00 |
| Cable bill | 17.00 |

| | | |
|---|---|---|
| Psychologist | $74.00 | ($18.00 per session) |
| Gasoline—Autombile | 100.00 | |
| Groceries | 200.00 | |
| ITT Financial Services | 50.00 | |
| Dental | 20.00 | |
| TOTAL | $1319.11 | |

$1319.11

**INCOME LEFT AFTER EXPENSES**                    $326.99

She testified that she never made a payment to Great Lakes for her loan. Bakkum also testified that she reaffirmed on two prepetition obligations: one to ITT Financial Services for a personal loan and one to First National Bank of Findlay for her automobile loan.

The parties stipulated as to the facts that the loans were made for educational purposes and that Great Lakes qualified as guarantor for purposes of Section 523. Thus, the only issue to be resolved by the Court is whether repayment of the student loan would impose an undue hardship upon the Debtor.

### LAW

The Debtor seeks to discharge her student loan obligations under Section 523(a)(8)(B) of the Bankruptcy Code, which states:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8)(B) (1989).

There is a strong legislative and judicial policy against allowing the discharge of student loans in bankruptcy. *See,* H.R.Rep. No. 595, 95th Cong., 1st Sess. 132–33 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787; *In re Brunner,* 46 B.R. 752 (S.D.N.Y.1985), *aff'd,* 831 F.2d 395 (2nd Cir.1987); *In re Johnson,* 5 B.C.D. 532 (Bankr.E.D.Pa.1979). The Commission on Bankruptcy Laws of the United States recommends that student loans "should not as a matter of policy be dischargeable before (the debtor) has demonstrated that for any reason (the debtor) is unable to earn sufficient income to maintain (the debtor and the debtor's dependents) and to repay the education debt." Report of the Commission of the Bankruptcy Laws of the United States, H.R.Rep. Doc. No. 137, 93rd Cong., 1st Sess., pt. 2 at 140, n. 15 (1973).

Generally, there is no doubt that requiring repayment of the student loan would work a hardship on a debtor and the debtor's family. The fact that a debtor's budget may be tight for the foreseeable future is the norm rather than the exception. *United States v. Collier,* 8 B.R. 909, 911 (Bkrtcy.S.D.Ohio 1981). However, the question is whether requiring repayment would work an *undue* hardship. *In re Johnson; In re Brunner; In re Richardson,* 32 B.R. 5, 6 (S.D.Ohio 1983). Neither the Bankruptcy Code nor the legislative history provides a clear definition or test for what constitutes undue hardship. Rather, the courts have made this determination on a case-by-case basis, taking into consideration a variety of factors. The case law, however, has identified three tests to be applied in determining if the facts and circumstances of a particular case will satisfy the undue hardship standard. *See In re Johnson; In re Brunner; In re Conner,* 89 B.R. 744 (Bkrtcy.N.D.Ill. 1988); *In re Kammerud,* 15 B.R. 1 (Bkrtcy.S.D.Ohio E.D.1980).

The first test is a mechanical one under which the Court compares a debtor's present and projected future income and

expenses and surrounding circumstances to determine whether it is reasonable to require that the loan be repaid in whole or in part. *See, In re Kammerud*, at 9. *See also, In re Love*, 33 B.R. 753 (Bkrtcy. E.D.Va.1983). The second test is a good faith test where the court inquires as to whether the debtor has made a good faith effort to begin repayment of the loan, to renegotiate the loan, and to minimize expenses and perhaps find a better paying job. *See, In re Holzer*, 33 B.R. 627 (Bkrtcy.S.D.N.Y.1983). In the third test, the court examines whether or not the discharge of all or part of the student loan obligation would frustrate the Congressional policy underlying section 523(a)(8). *See, In re Price*, 25 B.R. 256 (Bkrtcy.W.D.Mo. 1982). This Court believes the combination of all three tests should be used in determining whether a student loan should or should not be discharged on undue hardship grounds.

Turning to the first test, therefore, it appears that the Debtor's present, and probable future income, when viewed in light of her reasonable expenses, will allow repayment of the entire loan. Bakkum was 27, single, lived alone, and had no dependents to support. Her income, even without the teaching position at the University of Toledo, was well above the poverty level. *See*, Statistical Abstract of the United States 430 (1991) (the threshold poverty level for one person was annual income which falls below $6,311.00 per year). She had steady employment for over two years and was seeking a full-time teaching position. Bakkum's prospects for a significant improvement in her financial circumstances are good as she was in good health and had a Masters degree in Sociology. Thus, under the first test, the Court would deem the entire obligation nondischargeable.

The second test focuses on the "good faith" of the debtor. In the case at bar, the Debtor has not taken steps to minimize her expenses. The Court has reviewed her Bankruptcy petition as filed on March 8, 1989, and compared it to her testimony at Trial and notes that the Debtor has increased her expenses post-petition. The Debtor's Bankruptcy petition reflects that at that time, the Debtor was paying Two Hundred Twelve Dollars and Fifty Cents ($212.50) per month in rent. The Debtor testified at Trial that she moved into a new apartment and was paying Four Hundred Seventy-five Dollars ($475.00) per month in rent. The Court finds it disturbing that the Debtor can now afford to pay more than twice the rent she was paying pre-petition and yet she claims that paying her student loan would be an undue hardship. The Debtor estimated One Hundred Twenty Dollars ($120.00) pre-petition for food and Two Hundred Dollars ($200.00) post-petition for food. The Court finds this curious as well. The Debtor has an excess of Three Hundred Twenty-six Dollars and Ninety-nine Cents ($326.99) of income a month over her expenses. She has the ability to pay her obligation. She testified that she never made a payment on this loan. There was no testimony presented as to whether she attempted to renegotiate the terms of the loan. Additionally, she reaffirmed on two pre-petition obligations. It is difficult for the Court to find that the Debtor has exerted her best efforts to minimize her expenses. The good faith test would favor finding the student loan obligation nondischargeable.

Finally, under the third test, the Debtor's circumstances must be examined in the context of the policies which courts have found relevant to dischargeability of student loans. The logic of these policies has been questioned, and their usefulness may be limited, but the Court will nevertheless analyze the Debtor's case under the policy test criteria. *See, In re Conner*, 89 B.R. 744, 479 n. 20 (Bkrtcy.N.D.Ill.1988). In applying the policy test, courts have looked at whether the dominant purpose of the debtor's filing was to discharge the student loan, and to what extent the debtor is likely to benefit financially from the education financed by the loans. The Court, in reviewing the Debtor's petition, finds that the Debtor failed to properly schedule her student loans. The Debtor, by her Complaint of October 25, 1989, stated that her total indebtedness owed to Mankato State University, Student Loan Service Center,

Minnesota Higher Educational Coordination Board, Trane Employees Federal Credit Union, Loan Servicing Center, and Sallie Mae Student Loan Servicing Center (as a successor in interest to the aforementioned) due to educational expenses, was over Seventy-five Thousand Dollars ($75,000.00) "with a total immediate principal balance of consolidated loans in the amount of Thirty Four Thousand One Hundred Thirty and 47/100 ($34,130.47) which shall accrue interest at the rate of nine (9) percent." Complaint, p. 2. Yet, neither amount is reflected in her schedules. The Debtor's schedules reflect that she only had a Thirty-two Thousand Eight Hundred Seventy-nine Dollar ($32,879.00) obligation due to student loans, presuming of course, that the reason all of these creditors were listed was for her student loan obligation. The percentage of the Debtor's overall debt based upon student loans was Seventy-six Percent (76%). It appears that the educational loans were the primary reason for the Debtor's filing. It also appears that the Debtor will receive future financial benefits from her education in Sociology. Thus, pursuant to the "policy test," the student loan obligation should be nondischargeable.

██ The test results in this case are not in conflict. The Court, at its discretion, may excuse any portion of the Debtor's student loan obligation which would create an undue hardship. The Court has weighed the questionable hardship expressed by the Debtor, the less than total good faith exhibited by the Debtor, and the relevant policy considerations concerning the Debtor's loans. Based upon the equities in this case, the Court finds that Thirty-six Thousand Six Hundred Seventy Dollars and Twenty-nine Cents ($36,670.29) should be nondischargeable under Section 523(a)(8). The Court recommends that commencing One (1) month after the date of this Order the Debtor make monthly payments of at least Two Hundred Dollars ($200.00) until the obligation is paid in full.

In judging the credibility of the witnesses, the Court has taken into consideration the witnesses' intelligence, age, memory, demeanor while testifying, the reasonableness of the testimony in light of all the evidence in the case, and any interest, bias, or prejudice the witness may have. In reaching the conclusions found herein, the Court has considered all the evidence and arguments of counsel, regardless of whether they are specifically mentioned in this Opinion.

Accordingly, it is

ORDERED that the amount of Thirty-six Thousand Six Hundred Seventy Dollars and Twenty-nine Cents ($36,670.29) of the Debtor's educational loans be, and is hereby, declared nondischargeable.

It is FURTHER ORDERED that the Debtor shall contact the Debtor within Fourteen Days (14) from the date of this decision to make a payment schedule in furtherance of this Opinion.

It is FURTHER ORDERED that all of the remainder of the Debtor's educational loans, all interest, all contractual attorney's fees arising from this litigation or other pre-petition collection efforts, are hereby held to be dischargeable.