**In re Duane Duke FOX and Johanna Estelle Fox, Debtors.**

**Johanna Estelle FOX, et al., Plaintiffs,**

v.

**STUDENT LOAN MARKETING ASSOCIATION (SLMA), Defendant.**

**Bankruptcy Nos. 93–3321, 93–32437.**

United States Bankruptcy Court, N.D. Ohio, Western Division.

Sept. 27, 1995.

---

Susan Hartman–Muska, Toledo, OH, for defendant.

William L. Swope, Findlay, OH, for plaintiffs.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on Plaintiff's Complaint to Determine Dischargeability of Debt. A trial was held in which the parties were afforded the opportunity to present evidence and make arguments they wished the Court to consider in reaching its Decision. The Court reviewed the written arguments of counsel, exhibits, relevant statutory and case law, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that Plaintiff Johanna Estelle Fox's partial repayment of the student loans will not create an undue hardship for her and her dependents under 11 U.S.C. § 523(a)(8)(B). Accordingly, the student loan of Plaintiff Johanna Estelle Fox will be reduced by eighty percent (80%) and found nondischargeable in the amount of Eight Hundred Forty ($840.00) Dollars. A repayment plan is scheduled accordingly.

### FACTS

It should first be noted that although Plaintiff Duane Duke Fox is a named co-debtor in the related bankruptcy case, and a named Plaintiff in this adversary, he has been an outsider to this adversary. He neither appeared at trial, nor does he appear to be in contact with Plaintiff Johanna Estelle Fox or her counsel regarding this adversary proceeding. Because it is not contested that Plaintiff Johanna Estelle Fox is the party who seeks the discharge of the disputed debts, and will ultimately have to repay the debt to the extent this Court finds it non-dischargeable, she will subsequently be referred to as "Debtor" for purposes of this Opinion.

Debtor filed a petition under Chapter 7 of the Bankruptcy Code on August 23, 1993, and seeks discharge of her student loans pursuant to the "undue hardship" provision of the Bankruptcy Code, 11 U.S.C. § 523(a)(8)(B). Debtor obtained two student loans from U.S. Bank in Spokane, Washington to enroll at the Business Computer Training Institute in Lacey, Washington, to familiarize herself with computer operation and data processing. The loans were guaranteed by Northwest Education Loan Association (hereafter "NELA") and serviced by Student Loan Marketing Association (hereafter "Sallie Mae").

The Stafford loan was in the amount of One Thousand Seven Hundred Fifty and $^{00}/_{100}$ Dollars ($1,750.00) for which Debtor was to repay Twenty and $^{14}/_{100}$ Dollars ($20.14) per month for one hundred an twenty (120) months. The first loan payment was scheduled to begin August 22, 1993. The Supplemental Loan for Student Loans ("SLS") was in the amount of Two Thousand Four Hundred Fifty–Three and $^{00}/_{100}$ Dollars ($2,453.00). This repayment plan consisted of Thirty and $^{48}/_{100}$ Dollars ($30.48) per month for one hundred twenty (120) months, beginning on the date of disbursal, November 16, 1992. Thus, Debtor's total repayment plan equaled Fifty and $^{62}/_{100}$ Dollars ($50.62) per month for one hundred twenty (120) months. Debtor has not begun repayment of either loan.

Debtor is thirty years of age and has been living separately from her husband, co-Debt-

or Duane Duke Fox (hereafter "Mr. Fox"), since November, 1994. She presently assumes full responsibility for the care of her two minor children, ages five years and one year. Originally, the children's father, Mr. Fox, agreed to pay the sum of One Hundred and 00/100 Dollars ($100.00) per week as support for the children. However, Mr. Fox is not presently employed and has consistently failed to meet this obligation. Debtor testified that there was no possible chance for future reconciliation between herself and her husband.

Debtor is currently employed at Hancor, Inc., Findlay, Ohio as a lab technician. Her net monthly earnings total approximately One Thousand Two Hundred Forty–Eight and 13/100 Dollars ($1,248.13). This amount does not, however, reflect any amount of child support that Debtor may receive from Mr. Fox.

Monthly expenses for Debtor and her two children equal One Thousand Seven Hundred Six and 50/100 Dollars ($1,706.50) per month, not including the amount Debtor presently owes to Sallie Mae and NELA for her student loans. Thus, Debtor's monthly expenses exceed her present income by Four Hundred Fifty–Eight and 37/100 Dollars ($458.37). To account for the discrepancy in monies received and monies paid out, Debtor states that she does not pay all of her bills when they are received, but only pays the creditors which threaten to discontinue their services. As a result, Debtor claims the student loans impose an undue hardship upon her and her children pursuant to § 523(a)(B)(8).

## LAW

The Bankruptcy Code provides in pertinent part:

**11 U.S.C. 523. Exceptions to Discharge**

(a) A discharge under sections 727, 1141, 1228(a), 1228(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(B) exception such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

## DISCUSSION

Determinations as to the dischargeability of debts are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). Thus, this case is a core proceeding.

A student loan is non-dischargeable unless, pursuant to 11 U.S.C. 523(a)(8)(B), it can be shown that exception from discharge will impose an undue hardship on the debtor and her dependents. "Undue hardship" is not defined in the Bankruptcy Code. However, the Commission on the Bankruptcy Laws of the United States recommended to Congress that:

[The] rate and amount of Debtor's future resources should be estimated reasonably in terms of ability to obtain, retain, and continue employment and the rate of pay that can be expected. Any unearned income or other wealth which the debtor can be expected to receive should also be taken into account. The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and [her] dependents, at a minimal standard of living within their management capability, as well as to pay the educational debt.

*In Re Wegfehrt,* 10 B.R. 826, 830 (Bankr. N.D.Ohio 1981), citing Commission on Bankruptcy Laws of the United States: Report on the Commission on the Bankruptcy Laws of the United States, H.R.Doc No. 137, 93 Cong., 1st Sess. Part II, p. 140, n. 15 (1973).

Case law has adopted a three prong approach to facilitate the determination of "undue hardship" in individual cases. *In re Kammerud,* 15 B.R. 1, 9 (Bankr.S.D.Ohio 1980); *In re Albert,* 25 B.R. 98, 100–101 (Bankr.N.D.Ohio 1981); *In re Bakkum,* 139 B.R. 680, 682 (Bankr.N.D.Ohio 1992). This approach includes a "mechanical" test, a "good faith" test and a "policy" test. *Id.*

Each case must be individually evaluated on a case by case basis. *Wegfehrt,* 10 B.R. at 830.

■ The mechanical test examines the debtor's employment status, future employment and income prospects, skills and education and any factors which relate to her performance in these areas, such as health, marketability of skills, or responsibility for minor children. *Kammerud,* 15 B.R. at 9. Relevant to this inquiry is the income that could be obtained by a spouse, or from an ex-spouse, as support.

■ Debtor and Mr. Fox have been living separately since November, 1994. Although Debtor stated at Trial that her marriage will most likely end in divorce or dissolution, they presently remain married, and hence share the responsibilities for household and child care expenses. Debtor is currently maintaining full time employment at Hancor, Inc., and is thus forced to pay the high cost of child care. This expense, as listed in her schedules, amounts to Four Hundred and 00⁄100 Dollars ($400.00) per month for her two minor children. Mr. Fox, on the other hand, is not presently employed. When Debtor and Mr. Fox lived in Washington, however, Mr. Fox obtained leadership skills through work in the armed forces, then obtained other employment until they moved to Ohio. Therefore, Mr. Fox must be considered as having employable skills. As a result, Mr. Fox's present absence from the work environment could be utilized to offset the budgeted child care expenses by either getting a job, or by personally assuming the daily child care responsibilities.

■ Originally, when the Debtor and Mr. Fox first decided to live separately, Mr. Fox agreed to pay One Hundred and 00⁄100 Dollars ($100.00) per month to help support the children. However, Mr. Fox has consistently failed to meet this obligation, and Debtor has received no payment since March of 1995. Although Debtor is aware that child support is mandatory in Ohio, Debtor has not filed a formal separation agreement or received a court order requiring Mr. Fox to contribute to the family expenses. As a result, Debtor is not using good faith efforts to obtain "any unearned income or other wealth which [Debtor could] expect to receive." *Wegfehrt,* 10 B.R. at 830.

Debtor also noted on her monthly expense schedule the cost of car payments and car maintenance on a 1989 Ford Bronco II. These loan payments, however, will be completed this year, unleashing yet another Two Hundred and 00⁄100 ($200.00) Dollars per month. The Court sympathizes with Debtor's concern that the Ford Bronco II may experience major mechanical difficulties in the future. However, the Debtor could trade in this vehicle for a more reliable less expensive car if Debtor does not wish to afford the luxury for a sport utility vehicle. Thus, the Court must consider that the termination of her present vehicle payments could free a portion of Debtor's income for the repayment of student loan liabilities.

In sum, though the Court realizes that the Debtor is presently facing the financial difficulties usually looked for under the mechanical test, the Court finds that Debtor is not maximizing all her resources to the best of her ability to obtain money required to meet all of her financial obligations.

■ Under the "good faith" test, the Court examines whether Debtor made a good faith effort to begin repayment of the loan, to renegotiate the loan, or to minimize expenses and maximize income. *Bakkum,* 139 B.R. at 683; *In re Holzer,* 33 B.R. 627 (Bankr. S.D.N.Y.1983). As stated above, the Court finds a lack of good faith to minimize Debtor's expenses and maximize income. Further, the Court finds a poor showing of good faith as Debtor made no attempt to repay the loans. Also, Debtor did not make an effort to renegotiate the terms of the loan or to perhaps defer the commencement of the payment plan.

■ Under the "policy" test the Court considers whether the discharge of all or part of the student loans would frustrate the Congressional policy underlying § 523(a)(8). *Bakkum,* 139 B.R. at 683. In applying this test courts have considered whether the dominant purpose in debtor's filing was to discharge the student loan. *Id.; Kammerud,* 15 B.R. at 10. This is usually accom-

plished by considering the amount of Debtor's indebtedness represented by the loans, and whether the debtor benefited from the education. *Id.* In this case, the Court finds that Debtor is using her education to further her present occupation, though the income realized may not correlate well with the amount of indebtedness. Further, the Court does not believe that the primary purpose of the Debtor's filing was the discharge of the student loans.

The three-pronged test of undue hardship will only be met under circumstances of extraordinary hardship, rather than mere hardship, financial adversity, or present inability to pay. *U.S. v. Brown,* 18 B.R. 219 (Bankr.D.Kan.1982); *In re Abrams,* 19 B.R. 64 (Bankr.D.Neb.1982). However, sometimes where undue hardship is not found, it may be equitable to reduce the non-dischargeable portion of the obligation. *In re Albert,* 25 B.R. 98, 102 (Bankr.N.D.Ohio 1982); *In re Woyame,* 161 B.R. 198, 203 (Bankr.N.D.Ohio 1993); *In re Gammoh,* 174 B.R. 707, 711 (Bankr.N.D.Ohio 1994).

Considering Debtor's lack of good faith and failure to maximize income from her husband's untapped earning potential or child care services, the Court finds that the facts presented do not satisfy the qualifications for an undue hardship discharge to the extent that Debtor seeks the discharge of her student loans in full. However, due to Debtor's present inability to meet current expenses, this Court does find that it would be equitable to reduce the amount of non-dischargeability to an amount that reflects Debtor's ability to repay in the future a reasonable portion of the debt incurred. This will allow the Debtor a greater chance for the traditional "fresh start" that bankruptcy provides while not offending the policies underlying the Bankruptcy Code provisions that require good faith efforts to maximize income and attempt repayment of student loans.

This Court finds it would be equitable to reduce Debtor's total amount of student loan debt by approximately eighty percent, to Eight Hundred Forty Dollars ($840.00). Thus, Debtor can make monthly payments of Fourteen and $^{00}/_{100}$ Dollars ($14.00) each

month for sixty months. This Court also finds that repayment should begin upon Debtor's husband obtaining employment and thereby creating additional income, or within one year from the date of this Order, whichever is earlier.

For all the foregoing reasons, the Court finds that the contested debts shall be determined nondischargeable to the extent detailed in this Opinion. In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

***ORDERED*** that the total balance of Debtor Johanna Estelle Fox's student loans shall be reduced to Eight Hundred Forty and $^{00}/_{100}$ Dollars ($840.00), and that this amount be, and is hereby, determined *NON–DISCHARGEABLE.*

It is ***FURTHER ORDERED*** that repayment of the aforementioned student loans shall become due and owing upon the earlier of the following occurrences: one (1) month after the date Debtor Duane Duke Fox begins employment; or one (1) year after the date of this opinion.

It is ***FURTHER ORDERED*** that the aforementioned repayment of student loans shall consist of sixty (60) consecutive months of payments totaling Fourteen and $^{00}/_{100}$ Dollars ($14.00) per month. The payments shall be made to the respective student loan creditors as follows: Student Loan Marketing Association, Five and $^{83}/_{100}$ Dollars ($5.83) per month, and Northwest Education Loan Association, Eight and $^{17}/_{100}$ Dollars ($8.17) per month.