In re Joseph A. WOYAME, Debtor.

Joseph A. WOYAME, Plaintiff,

v.

CAREER EDUCATION &
MANAGEMENT, et
al., Defendant.

Bankruptcy No. 93–3038.
(Related Case: 93–30051–7).

United States Bankruptcy Court,
N.D. Ohio, W.D.

Sept. 29, 1993.

Jay M. Patterson, Columbus, OH, for Ohio Student Loan Com'n.

Lloyd J. Blaney, Madison, WI, for Great Lakes Higher Educ. Corp.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This case comes before the Court after Trial on Plaintiff's Complaint to Determine the Dischargeability of a Debt Under 11 U.S.C. Section 523(a)(8)(B) and Great Lakes Higher Education's (hereafter "Great Lakes") Answer and Counterclaim. At Trial,

the parties were afforded the opportunity to present evidence, stipulations, briefs and arguments they wished the Court to consider in reaching its decision. This Court has reviewed the entire record in the case. Based upon that review, and for the following reasons, this Court has determined that Eight Thousand Eight Hundred Seventy-two and 73/100 Dollars ($8,872.73) of Plaintiff's consolidated debt should be Nondischargeable; and that the remainder of Plaintiff's loan, including interest, should be Discharged.

### FACTS

Plaintiff is twenty-four (24) years old, unmarried, has no children, and is in relatively good health. At present, Plaintiff is employed as a truck driver and does occasional farm work. Excluding farm earnings, Plaintiff's net salary totals approximately Nine Hundred Twenty and 00/100 Dollars ($920.00) per month. Plaintiff has, in the past, earned as much as Twenty Thousand Seventy-eight and 43/100 Dollars ($20,078.43) annually.

From 1987 through 1991, Plaintiff incurred educational debts in the amount of Twelve Thousand Seven Hundred Ninety-two and 66/100 Dollars ($12,792.66). The parties stipulated that in August of 1991, he received a consolidated loan which consists of the present existing obligations totalling approximately Eleven Thousand One Hundred Fifty-seven and 73/100 Dollars ($11,157.73). Great Lakes is the holder of the promissory note on this loan. It is the disposition of this consolidation loan which is currently at issue.

The original loans were taken out for various educational purposes. In 1987, Plaintiff enrolled in a program at the University of Toledo (hereafter "UT") for purposes of pursuing a career in heating and air conditioning repair and maintenance. The amount of educational assistance he received was approximately Two Thousand Two Hundred Eighty-five and 00/100 Dollars ($2,285.00). After one (1) year in this program, Plaintiff concluded that despite the alleged assurances of the school administration, the program would not equip him with the skills necessary to engage in the heating and air conditioning

repair business. Plaintiff withdrew from UT and twelve (12) months later enrolled in the RETS Institute of Technology (hereafter "RETS"). It was at RETS that Plaintiff pursued and eventually received his certificate in heating and air conditioning repair. In the course of doing so, Plaintiff incurred further loan obligations in the amount of Five Thousand Three Hundred Eighty-three and 66/100 Dollars ($5,383.66).

Plaintiff met with no success in finding employment in the heating/air conditioning field. Having need of a job, Plaintiff enrolled in truck driving school, incurring further obligations of Five Thousand One Hundred Twenty-five and 00/100 Dollars ($5,125.00). Shortly after graduating from truck driving school, Plaintiff obtained employment driving a tractor-trailer some distance from his home. In order to be with his former fiancee, Plaintiff found another truck driving job based in his hometown. The new job paid approximately One and 50/100 Dollars ($1.50) per hour less than the former job.

On January 8, 1993, Plaintiff filed a Petition pursuant to Chapter 7 of the Bankruptcy Code. On February 3, 1993, Plaintiff initiated this cause of action, naming the following Defendants: Career Education & Management; Great Lakes; Ohio Student Loan Commission fka Ohio Student Aid Commission (hereafter "OSAC"); and RETS. OSAC filed an Answer. Great Lakes responded by filing an Answer and Counterclaim alleging that repayment of the student loans will not constitute an undue hardship to Plaintiff. OSAC and Plaintiff entered into an agreement whereby judgment was rendered in favor of OSAC against Plaintiff in the amount of Three Thousand One Hundred Ninety Three and 38/100 Dollars ($3,193.38) Default judgments were subsequently rendered against Career Education & Management and RETS for their failure to respond to the Complaint or otherwise defend this cause of action.

In this cause of action, Plaintiff seeks to have his obligation to Great Lakes declared dischargeable as imposing an undue hardship under 11 U.S.C. § 523(a)(8)(b). Defendant seeks to have the same obligations declared nondischargeable.

## LAW

11 U.S.C. Section 523 provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual Debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship or stipend overpayment first became due more than seven years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the Debtor and the Debtor's dependents.

## DISCUSSION

### I. Finding of Core Proceeding

This case concerns the determination of the dischargeability of a debt, and thus constitutes a core proceeding pursuant to 28 U.S.C. 157(b)(2)(I).

### II. Undue Hardship

■ Plaintiff's educational loan became due less than seven (7) years prior to the filing of his Petition and therefore the only mechanism for discharge is under 11 U.S.C. § 523(a)(8)(B). Under this Section, Plaintiff's educational benefits are excepted from discharge only if payment would impose an undue hardship. In the past, this Court has used a tripartite analysis to gauge undue hardship. *Silliman v. Nebraska Higher Education Loan Program (In re Silliman)*, 144 B.R. 748 (Bankr.N.D.Ohio 1992); *Bakkum v. Great Lakes Higher Education Corporation (In re Bakkum)*, 139 B.R. 680 (Bankr. N.D.Ohio 1992); and *In re Hawkins*, 139 B.R. 651 (Bankr.N.D.Ohio 1991). This analysis assesses undue hardship based upon three (3) tests: a mechanical test, a good faith test and a policy test. *In re Johnson*, 5 B.C.D. 532, 539–45 (Bankr.E.D.Pa.1979), *aff'd* 831 F.2d 395 (2d Cir.1987).

■ This Court will examine this case using all three (3) tests in determining the dischargeability of Plaintiff's loan obligation. Under the mechanical test, the Court considers the Plaintiff's current employment and income situations; future employment and income prospects; current and future expenses; education levels; work skills; health; family support obligations; and the marketability of the Plaintiff's work skills. *North Dakota State Board of Higher Education v. Frech (In re Frech)*, 62 B.R. 235, 240 (Bankr.D.Minn.1986); and *State of Ohio Student Loan Commission v. Kammerud (In re Kammerud)*, 15 B.R. 1 (Bankr.S.D.Ohio 1980). It is the Plaintiff who bears the burden of showing that his income will not be sufficient to maintain a menial or "poverty level" style of living for the foreseeable future if the loan is not discharged. *In re Silliman*, at 751.

■ Plaintiff does not meet the burden of proof with respect to the mechanical test. Plaintiff has been employed as a truck driver for some time, and is provided with enough work to fill a forty (40) hour work week. He testified that soon he will have the requisite experience to allow him to move into a higher paying trucking job. Plaintiff's only physical problem is a minor back ailment, which requires treatment by a chiropractor four (4) times a year, at a cost of Fifty Dollars ($50.00) per visit. This back problem does not prevent him from engaging in, or seriously impair his ability to engage in, his chosen occupation. Further, Plaintiff is trained in the field of heating and air conditioning maintenance and repair, and may be able to find additional employment in this area. Plaintiff has no wife or children, and thus has no family support obligations.

In addition, testimony was presented that Plaintiff's income is approximately Six and 50/100 Dollars ($6.50) per hour, which extrapolates to Twelve Thousand Nine Hundred Sixty and 00/100 Dollars ($12,960.00) per year. This figure does not include any income from the extra farm work in which

Plaintiff occasionally engages. His stipulated income for 1992 was Twenty Thousand Seventy-eight and 43/00 Dollars ($20,078.43). As both of these figures far exceed the poverty level guideline for a one (1) person family unit—Six Thousand Nine Hundred Seventy and 00/100 Dollars ($6,970.00), 58 Fed.Reg. 8287 (1993), and because of the reasons cited above, Plaintiff fails to pass the mechanical test.

■ The second test focuses on the good faith of the Plaintiff. Specifically the Court will examine the efforts which Plaintiff has made to minimize his current living expenses while maximizing his earning potential. The Court will also look at whether or not Plaintiff has made a bona fide effort to repay the loans. *In re Silliman*, at 751.

■ In the case at bar, Plaintiff fails the good faith test. Plaintiff has made only minimal efforts to pare his living expenses. He moved back into his parents' home, paying them Two Hundred and 00/100 Dollars ($200.00) per month in rent. This amount is only slightly less in rent than his previous payment. In addition, he pays Thirty Six and 00/100 Dollars each month for cable television and allots Fifty and 00/100 Dollars ($50.00) per month for entertainment. Plaintiff testified that he eats out frequently, at least twice, and sometimes as often as three (3) times per day at a costs of Eighty and 00/100 Dollars ($80.00) to Ninety and 00/100 Dollars ($90.00) per week. This Court sees no reason why Plaintiff could not, as many other working persons tend to do, "brown bag" his meals occasionally. Moreover, Plaintiff currently pays Two Hundred and 00/100 Dollars ($200.00) per month toward his outstanding auto balance. After two (2) additional payments, the car will have been paid off, and the Plaintiff will have a greater cash flow. While this Court does not ascribe to a reduction in expenses to the poverty level, it sees no reason why the Plaintiff should be able to spend over Four Hundred and 00/100 Dollars ($400.00) per month on food and entertainment while his creditors languish unpaid.

Nor does it seem to this Court that Plaintiff is taking adequate steps to maximize his income. Plaintiff testified that he tried to get a job in heating and air conditioning at "a few places", but did not have the requisite experience. He has abandoned his search for work in this field, after these minimal efforts, despite investing over Seven Thousand and 00/100 Dollars ($7,000.00) in pursuit of his certification. He has not attempted to get a part-time apprenticeship, or find some other avenue through which he might gain the necessary experience, nor has he attempted to find any other part-time job in order to meet his expenses.

Further, Plaintiff voluntarily left his higher paying trucking job, in order to live in the location which he chose. This move was ostensibly made in order to provide him with more time with his former fiancee. Plaintiff presented no persuasive testimony to the effect that he had other ties to the area which compelled him to remain there, nor did he provide any rationale for not reacquiring his old job, to which he was optimistic he could return if he so desired.

Finally, Plaintiff has made virtually no effort to repay the balance of the loan. There was testimony to the effect that he had paid small amounts in the past, but this was in some dispute. Regardless, the efforts which were made were clearly not a bona fide effort to fulfill his fiscal obligations. Additionally, Plaintiff made no effort to refinance the loan, obtain a forbearance, or work out some sort of a manageable payment schedule. In short, Plaintiff fails the good faith test.

■ In applying the policy test, the Court must determine whether allowing the discharge of a particular student loan would constitute an abuse of the bankruptcy process. *In re Frech*, at 241. The Court will examine the extent to which the motivation behind the bankruptcy Petition was to avoid liability for the student loan obligations in question. *United States v. Brown (In re Brown)*, 18 B.R. 219, 223 (Bankr.S.D.Kan. 1982); and *In re Silliman*, at 751. Should the discharge of the loans be a dominant purpose of the bankruptcy, the Plaintiff will fail the policy test. This is because there is a strong legislative and judicial policy against allowing the discharge of student loans in Bankruptcy. See H.R.REP. No. 595, 97th

Cong., 1st Sess. 132 (1977) U.S. Code Cong. & Admin. News pp. 5787, 6093; *Brunner v. New York State Higher Education Services Corporation (In re Brunner),* 46 B.R. 752 (Bankr.S.D.N.Y.1985); and *In re Johnson,* at 542–43.

■ Examining the Plaintiff's original Bankruptcy Petition, it appears that educational loans in general constitute over 50% of the total indebtedness. The loans specifically at issue in this action make up approximately 40% of Plaintiff's total indebtedness. These percentages are large enough to support the finding that a dominant purpose underlying the Petition was, in fact, the avoidance of Plaintiff's student loans. As such, Plaintiff fails the policy test.

■ Although the Plaintiff has done little to comply with, or attempt to comply with, the terms of his agreement, testimony was presented which tended to support the finding that allowing the full amount of the debt to be held nondischargeable would work an undue hardship upon the Plaintiff. The Bankruptcy Court may, in its discretion, determine that equity dictates reducing the amount of nondischargeable debt to a level which will not inflict undue hardship upon the Plaintiff, and is of a manageable level, given Plaintiff's income, obligations and steps which the Court feels he could or should take to alter his financial situation. See, *In re Johnson,* at 543–544; *In re Silliman,* at 752; *In re Bakkum,* at 684; and *In re Litell,* 6 B.R. 85, 89 (Bankr.D.Ore.1980).

The Court has weighed the potential hardship which might be inflicted upon Plaintiff; the actions of the Plaintiff in addressing this debt; his financial status; and the relevant policy considerations. Based on these factors, the Court finds that Eight Thousand Eight Hundred Seventy-two and 73/100 Dollars ($8,872.73) of Plaintiff's Eleven Thousand One Hundred Fifty-seven and 73/100 Dollars ($11,157.73) consolidated debt should be held Nondischargeable. The remainder, Two Thousand Two Hundred Eighty-five and 00/100 Dollars ($2,285.00), should be discharged as imposing undue hardship pursuant to 11 U.S.C. 523(a)(8).

In judging the credibility of the witness, the Court has taken into consideration his age, intelligence, memory, demeanor while testifying, the reasonableness of his testimony in light of all evidence in the case, and any interest, bias, or prejudice the witness may have. In reaching this conclusion, the Court has considered all of the evidence, stipulations and arguments of counsel, whether or not they have been specifically referred to in this opinion.

*Accordingly, it is,*

**ORDERED** that Eight Thousand Eight Hundred Seventy-two and 73/100 Dollars ($8,872.73) of the Plaintiff's consolidated debt be, and is hereby, held Nondischargeable; and that the remainder of Plaintiff's loan, including interest be, and is hereby, held to be Dischargeable.

It is **FURTHER ORDERED** that Plaintiff shall be responsible for and pay the sum of Ninety Two and 43/100 Dollars ($92.43) per month toward the retirement of the nondischargeable portion of his indebtedness commencing November 1, 1993.