In re Christine PHELPS, Debtor.

Christine PHELPS, Plaintiff,

v.

**HEMAR INSURANCE CORPORATION OF AMERICA, Defendant.**

Bankruptcy No. 94–11928.
Adv. No. 94–1185.

United States Bankruptcy Court,
D. Rhode Island.

March 17, 1995.

Jason D. Monzack, Kirshenbaum & Kirshenbaum, Cranston, RI, for debtor/plaintiff.

Richard M. Peirce, Christopher J. Alessandro, Providence, RI, for defendant.

Arnold Blasbalg, Chapter 7 Trustee, Providence, RI.

*ORDER DENYING PLAINTIFF'S COMPLAINT TO HAVE GOVERNMENT GUARANTEED/INSURED EDUCATIONAL LOAN DECLARED NONDISCHARGEABLE*

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on February 8, 1995, on the Debtor's request for a determination that $22,000 owed to the Defendant for educational loans is dischargeable, under 11 U.S.C. § 523(a)(8)(B). This section makes educational loans nondischargeable in bankruptcy unless "excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8)(B). While the Code does not define undue hardship, "it seems universally accepted ... that 'undue hardship' contemplates unique and extraordinary circumstances. Mere financial adversity is insufficient, for that is the basis of all petitions in bankruptcy." *In re Brown,* 18 B.R. 219, 222 (Bankr.D.Kan.1982); *see also Garmerian v. Rhode Island Higher Educ. Assistance Auth. (In re Garmerian)* 81 B.R. 4, 5 (Bankr.D.R.I. 1987).

The Debtor, 36, is a single parent of a two year old son who lives with her. Since October 1994, the Debtor has been employed as an administrative assistant with Fleet Investment Services, at a beginning annual salary of $24,000. She has also worked as a paralegal at a leading Providence law firm, for about the same salary. Her former husband, an attorney working as a sole practitioner, is under a Family Court order to pay $50 per week as child support, plus an accruing obligation of $61 per week to be paid when he has the financial ability to make such payments. The Debtor has a bachelor's degree in English Literature, and has completed three semesters of law school. She is currently taking graduate courses in library sciences at the University of Rhode Island, with the hope of becoming a librarian. She "loves books, and that kind of work will improve her quality of life."[1] The Debtor states that if she completes her present course of study, which will take approximately 3 years at the

---

1. She has sought and obtained *additional* financial aid for the library science course of study which she is now pursuing.

present rate, she expects to earn between $20,000–$25,000 per year.

The proceeds of the educational loan at issue were used to pay for the Debtor's three semesters of law school, which she claims were of no benefit.[2] The Debtor, who paints a bleak outlook of her future and describes herself as a loser, states that she has reached her peak earning potential at her present job because she "is not management material," and expects only modest, two to three percent annual increases in her salary. She also questions the prospect of even maintaining her current employment because of her prior bouts with "bad luck."

As the Debtor described, she is on a "tight budget," but that is partially of her own doing, evidence that she: has been living in a luxury apartment at the monthly rental of $995; spends $100 a month for telephone; the same for travel; $450 per month for food, etc. These kinds of expenses are excessive for someone in the Debtor's circumstances, who has made only nominal payments on this and other educational loans during these tough times. On the other hand, regarding the Debtor's child care costs, the Court is aware that while such expenses are substantial and long term, they are an essential part of her budget if she is to earn a living.

Ms. Phelps testified that her parents have been paying the rent for her apartment, but that they intend to stop making these payments, as they can no longer afford them. She states that in anticipation of having to pay rent herself, she is looking for a place to live for approximately $500 per month, but worries that even if she finds such an apartment, may still require financial assistance to meet her minimum, fixed obligations.

Based upon our observations at the hearing, we do not share the Debtor's pessimism about her present abilities or her future prospects. Ms. Phelps is a young, articulate woman who either underestimates or understates her talents and future earning capacity. She is presently employed in a position of responsibility at a respectable salary, where advancement is more probable than not, and her former husband is paying, but also accruing support obligations to her

which will likely be paid, and probably increase as Mr. Phelps' income from his law practice improves.

Based on the record in this proceeding to date, we find that this is not a permanent hardship situation, but rather one where the Debtor is suffering temporary financial stress. To allow the discharge of this educational loan obligation *at this time* would violate both the letter and spirit of 11 U.S.C. § 523(a)(8)(B). Accordingly, the Debtor's request for relief is DENIED, without prejudice (the adversary proceeding may be continued nisi), and the Court will review this matter in approximately one year to assess the financial condition of the Debtor, as well as that of her former husband, vis-a-vis Family Court ordered obligations to increase his contribution to the support of his son.

Based on her present status, the Debtor is ORDERED to make a nominal payment of $40 per month to HEMAR. If circumstances change in either direction before next years' scheduled review session, the Court will entertain motions, by either party, to modify this Order.

Enter Judgment consistent with this opinion.

---

2. This assertion is questionable. That Phelps was able to land a job as a paralegal is probably more attributable to her legal training than to her English Literature background.