In re Samuel L. RAIMONDO, Debtor.

Samuel L. RAIMONDO, Plaintiff,

v.

NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION; State University of New York; Key Bank, Defendants.

Bankruptcy No. 92–12565 B.
Adv. No. 92–1261 B.

United States Bankruptcy Court,
W.D. New York.

June 16, 1995.

Jeffrey Freedman (Paul M. Pochepan, of counsel), Buffalo, NY, for Samuel L. Raimondo.

John G. Binseel, Office of Counsel, N.Y.H.E.S.C., Albany, NY, for N.Y. State Higher Educ. Services Corp.

Dennis C. Vacco, Atty. Gen. (Ronald F. Kennedy, Asst. Atty. Gen., of counsel), State University of N.Y., N.Y. State Dept. of Law, Albany, NY, for State University of N.Y.

CARL L. BUCKI, Bankruptcy Judge.

This case cogently illustrates a problem that is common to many disputes involving the hardship discharge of student loan obligations. At issue is whether this Court is to apply standards of hardship only to full repayment of the existing obligation as a single, unalterable claim, as opposed to payment of any lesser amount. If viewed from a different perspective, the issue becomes whether hardship discharge is an all-or-nothing proposition. If hardship were to arise from repayment of the entire loan, may this Court preserve a lesser portion whose payment is affordable?

Samuel L. Raimondo, the plaintiff herein, filed a petition for relief under Chapter 7 of the Bankruptcy Code on July 24, 1992. Thereafter, this Court granted an order of discharge to the debtor. In the present ad-

versary proceeding, Mr. Raimondo seeks to determine the dischargeability of seven distinct obligations for repayment of educational loans owed to two lenders. Six of these obligations arise from a series of guaranteed student loans previously held by Key Bank, but now assigned to the New York State Higher Education Services Corporation. The remaining obligation is a National Direct Student Loan which the debtor obtained from the State University of New York. Less than seven years have transpired since any of these obligations first became due. Accordingly, pursuant to 11 U.S.C. § 523(a)(8), these debts are dischargeable only if "excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents."

The New York State Higher Education Services Corporation and Mr. Raimondo have stipulated that the six Key Bank loans represent a current principal obligation of $24,577.78, on which interest is now due from December 12, 1992. The regular monthly payment on this indebtedness is $310. By separate stipulation, the State University of New York has acknowledged that the unpaid principal balance on its National Direct Student Loan totals $773.13.

Samuel Raimondo was the only witness at the trial of this matter. Although the debtor's post-secondary education extended over fourteen years at a number of schools, he did ultimately secure both a bachelor's degree and a masters of science in the field of criminal justice. Unfortunately, he has been unable to secure employment in his chosen discipline of law enforcement. Mr. Raimondo testified that access to a job in this area is generally obtained through civil service examination, and that despite many attempts, he has yet to secure a sufficiently high score to entitle him to an offer of employment. Based upon his history of test results, the debtor was not optimistic about any employment in the field for which he has trained. At the time of trial, Mr. Raimondo was unemployed. His most recent job was as a mental health care worker, for which he received an annual compensation of approximately $18,000.

To qualify for the hardship discharge of an educational loan, a debtor must satisfy the three part test that the Second Circuit established in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (1987). Specifically, Mr. Raimondo must demonstrate "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for [him]self and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." *Id.* at 396. This Court is satisfied that the debtor has fulfilled the first and third of these requirements. Being unemployed, Samuel Raimondo lacks sufficient income to both repay his student loans and maintain a minimal standard of living for himself, his wife, and his infant son. Demonstrating the debtor's good faith are the history of at least some payments and his efforts to remain in good standing with these obligees, both of whom granted hardship deferments or periods of forbearance. It is the second prong of the *Brunner* test, however, which the debtor fails to satisfy in full.

The debtor has presented no special circumstances which might indicate that his current unemployment will persist for a significant portion of his repayment period. However, this Court is convinced that for the foreseeable future, Samuel Raimondo is unlikely to earn an income substantially in excess of $18,000 per year, that being the highest compensation received through his last employment. As outlined in the schedules filed with the debtor's bankruptcy petition, reasonable expenses will surely dissipate all of this income. Nonetheless, upon resumption of employment and without precluding a minimal standard of living, the debtor's family should still be able to budget some modest payment on account of the student loan obligations. Accordingly, no undue hardship would arise if the debtor were to repay only the National Direct Student Loan having a principal balance of $773.13, or if the debtor were to pay only one of any of the six obligations now due to the New York State

Higher Education Services Corporation. On the other hand, an undue hardship would just as clearly occur if the debtor were required to repay the entire obligation to the New York Higher Education Services Corporation, in the principal amount of $24,577.78.

 Section 523(a)(8) references indebtedness "for an educational . . . loan." Thus, the statute requires that the Court consider the dischargeability of each loan as a separate obligation. Nonetheless, one can assess undue hardship only in the context of all of the debtor's postpetition financial obligations. It is impossible to consider the dischargeability of any one loan in isolation from the effect of this adversary proceeding upon all of the other loans. Unfortunately, subdivision B of section 523(a)(8) contains no specific direction regarding the dischargeability of multiple obligations. Nothing in its text expressly authorizes the division of a single claim, such as that asserted by the New York State Higher Education Services Corporation, into dischargeable and nondischargeable parts. Nor does this subdivision provide guidance as to the methodology either for according disparate treatment to multiple obligations (whether to different creditors or as among different loans to the same creditor), or for the bifurcation of a single large obligation. On the other hand, nothing in the statute expressly precludes such division, particularly when such division is singularly able to placate the commands of equity.

 No basis exists to accord a higher priority to either one or the other of the debtor's two student loan obligees, or to any one of the debtor's seven educational loans. If this Court wished to distinguish the creditors by the size of their claims, it would surely need also to distinguish as among the six loans which comprise the obligation to the New York State Higher Education Services Corporation. Being virtually identical in character, each loan is equally entitled to priority. Until seven years have transpired from the date that an educational loan first becomes due,[1] the age of that obligation provides no basis for priority. The concept of "first in time, first in right" might apply where subsequent creditors fail to diligently protect their interests despite actual or constructive knowledge of a preexisting loan. As to each of his outstanding loans, however, Mr. Raimondo fulfilled the statutory requirements for student loan eligibility. *See* 20 U.S.C. § 1077(a). Therefore, the underwriters of subsequent loans could properly disregard the cumulative affordability of the total indebtedness. No statute dictates a disparity of result as among educational lenders. Rather, equity demands an identical treatment for these similarly situated creditors with respect to each of their similarly structured obligations.

The present facts highlight the logical conflict which would arise if the structure and size of an educational loan were allowed to define the limits of its dischargeability. If dischargeability depends upon the hardship of repayment of obligations whose form is inviolable, then the same debtor might discharge a large educational loan, even while remaining obligated to repay the smaller claim of a separate lender. Size, however, offers the only basis for such a distinction. In the present instance, if one were to segregate the six loans held by the New York State Higher Education Services Corporation, each such segregated loan as well as the smaller claim of the State University of New York would equally merit status as a nondischargeable obligation. From this perspective, no one obligation is more worthy of discharge than the other. As consolidated, however, these loans pose an undue hardship. To discharge all would violate the clear directive of section 523(a)(8), that no educational loan is to be discharged in the absence of undue hardship. To preserve each would similarly violate the reflective concept that undue hardship justifies the discharge of student obligations.

Although the peculiar facts of this case accentuate problems in interpreting section 523(a)(8), the same fundamental issue would arise even if the debtor's educational loan

---

**1.** Although not implicated in the present dispute, 11 U.S.C. § 523(a)(8)(A) provides that an educational loan is discharged if such loan "first became due before more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition."

were in the form of a single, large obligation. To require that a single result apply to an entire educational loan will, in many instances, reach either too far or not far enough. Such an approach rewards irresponsibility and penalizes those who exercise restraint in borrowing for purposes of education. The test of section 523(a)(8) is one of undue hardship. For this reason, the result should not differ as between debtors whose circumstances are identical except as to the size of their educational loans. To deny discharge to a small but affordable loan would be inequitable unless a similar debtor were required to repay the same dollars as a portion of his or her larger obligation.

The answer to these potential contradictions is an interpretation of subdivision (B) of section 523(a)(8) which permits the discharge, on a pro rata basis, of only that portion of the outstanding educational indebtedness which exceeds an amount that the debtor can pay without undue hardship. Although the Bankruptcy Code might not expressly provide for the partial discharge of educational loans, it does require that these debts not be discharged in the absence of undue hardship.[2] If necessary to achieve this purpose, partial discharge is an appropriate remedy. Fully consistent with the goals of section 523(a)(8)(B), this approach requires that the debtor remain obligated to pay to the limits of hardship, but never less than that standard.

Upon the filing of his bankruptcy petition, the debtor submitted a budget showing legitimate expenses in excess of net income. Under these circumstances, the repayment of any student loan would surely impose a hardship. The test under section 523(a)(8)(B), however, is not one of hardship, but whether repayment imposes an undue hardship. In the context of the second prong of the *Brunner* test,[3] many factors enter into the calculation of that sum whose repayment would constitute such an undue hardship. Relevant factors include the monthly payment needed to amortize a suggested principal over the normal repayment term, the number of dependents, the potential impact of those dependents upon future expenses, whether the debtor's budget permits any possibility for saving, and whether the debtor might augment income to generate some minimal payment on account of educational loans.

It is not the function of this Court to dictate choices of life style or to micro-manage the budgeting of family expenses. Judges are ill-equipped to review personal decisions, such as whether both spouses should seek employment, whether a family has need for two cars or one, or whether a debtor should relocate in search of higher wages. On the other hand, budgets are not toys that a debtor may manipulate to show hardship from payment of a student loan. Unpleasant though the task may be, this Court must nonetheless review the reasonableness of a debtor's budget, both as to allocation of projected expenses and as to projections for income maximization.

Mr. Raimondo's prospects for future employment are not so dire as to preclude the possibility of some repayment of his student loans. If he were to secure a job providing a level of compensation that is only slightly higher than his last employment, his income would be sufficient to satisfy projected expenses. It cannot be said that the debtor's budget leaves no room for economizing of expenses, or that the debtor might not supplement his income through part-time employment. Based upon the debtor's testimony and a careful review of his budget, this Court is satisfied that the debtor, upon resumption of employment, could afford a monthly payment of approximately $60, with-

---

**2.** For this reason, numerous courts have exercised their equitable powers to require partial payment of educational loans as a condition for discharge of the balance of the obligation. *See* cases cited in *Matter of Sands,* 166 B.R. 299, 312–13 (Bkrtcy.W.D.Mich.1994).

**3.** Had this case implicated only the first prong of the *Brunner* test, this Court would have given consideration to those decisions which conditioned discharge upon some specified payment on account of outstanding student loans. *See In re Littell,* 6 B.R. 85 (Bankr.D.Ore.1980). The debtor's present income does not permit any such payment. Rather, the present issue is whether the debtor might afford some repayment at some future point. In this context, the form and manner of repayment are issues best reserved to resolution through negotiation or pursuant to applicable regulations.

out precluding the debtor from maintaining a minimal standard of living for himself and his family. Such an amount is approximately the sum needed to amortize an indebtedness of $5,000 over ten years at a rate of 9 percent, these being typical repayment terms for a student loan obligation. *See* 20 U.S.C. § 1077(a)(2)(B) and § 1077a(a)(2).

There exist no additional circumstances indicating the likely persistence of a state of affairs under which the debtor could not afford repayment of $5,000 on account of his student loans. The second prong of the *Brunner* test, therefore, precludes the discharge of this sum. Conversely, any sum in excess of this amount should be discharged. Of the debtor's total educational loans, the nondischargeable obligation shall be distributed pro rata between his two creditors.[4] Accordingly, judgment shall be entered discharging that portion of the obligation of the New York Higher Education Services Corporation which exceeds $4,847.51, and further discharging that portion of the obligation of the State University of New York which exceeds $152.49.

So ordered.

---

**4.** The nondischargeable portion of each outstanding claim is calculated, therefore, as that part of $5,000 which represents the same proportion as the creditor's claim would bear to the total of all educational indebtedness.