**In re Genevieve E. WETZEL, Debtor.**

**Genevieve E. WETZEL, Plaintiff,**

v.

**NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION, Defendant.**

Bankruptcy No. 90–00175.
Adversary No. 96–70139.

United States Bankruptcy Court,
N.D. New York.

Dec. 30, 1996.

---

Barry Weinstein, Albany NY, for Defendant.

Boyle & Anderson, P.C., Auburn, NY (Robert K. Bergan, of counsel), for Debtor/Plaintiff.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before this Court is an adversary proceeding commenced by a complaint dated April 23, 1996 ("Complaint") filed by Genevieve Wetzel, also known as Genevieve Wetzel Burk ("Plaintiff"), seeking a determination that certain debts owed to the New York State Higher Education Services Corporation ("Defendant") are dischargeable. A trial was held on October 9, 1996, in Utica, New York. The parties were granted an opportunity to submit post-trial memorandums of law, and the matter was submitted for decision on November 6, 1996.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(I).

### FACTS AND ARGUMENTS

On or about January 24, 1990, Plaintiff filed a petition in bankruptcy under chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). On August 30, 1990, Plaintiff received a general discharge pursuant to Code § 727. Prior to filing bankruptcy, Plaintiff had obtained four student loans for the purpose of attending the Bryant & Stratton Business Institute. These loans were

subsequently purchased by Defendant, who in 1995 commenced an action in State court seeking a judgment on the outstanding student loan debts.[1] After some attempts to resolve the matter, Plaintiff reopened her chapter 7 bankruptcy case and commenced this adversary proceeding against Defendant on June 26, 1996, to determine the dischargeability of the debts.

Plaintiff argues that she believed the student loan debts guaranteed by Defendant were discharged pursuant to the bankruptcy discharge she received in 1990. According to her testimony at trial, Plaintiff began to receive calls and letters seeking payment on the student loan debts soon after her discharge. In response, Plaintiff's attorney at that time allegedly forwarded letters dated March 30, 1990, April 23, 1990, and October 25, 1990, to the Loan Servicing Center in Pennsylvania indicating that the student loan debts were dischargeable pursuant to Code § 523(a)(8)(B). *See* Plaintiff's exhibit 8. It was Plaintiff's understanding then that she was not to be contacted anymore, however in 1995, Plaintiff claims she was contacted by Deborah Damm in reference to her student loans. In response, Plaintiff allegedly sent a letter to Ms. Damm at the New York State Higher Education Services Corporation dated September 29, 1995, in which she explained the circumstances surrounding her decision to file bankruptcy and her belief that the student loan debts were discharged. *See* Plaintiff's exhibit 9. This letter did not resolve the matter and Plaintiff was subsequently sued by Defendant in 1995 for the balance of her student loan debts. After authorizing her current attorneys to discuss payment options with Defendant, Plaintiff determined that she could not afford any payments, and presumably this adversary proceeding was commenced to determine the dischargeability of the debts.

Other information elicited at trial concerns Plaintiff's past and present financial situations. According to her testimony, Plaintiff was not immediately employed after she finished her studies at Bryant and Stratton or at the time she filed bankruptcy. She soon after obtained employment at Metropolitan Life Insurance in March of 1990 as a medical claims approver, a job she claims was unrelated to her studies at Bryant & Stratton. This job lasted until March 1995, at which time her position was eliminated due to downsizing. In November and December of 1995, Plaintiff obtained part-time work through an employment agency, and later obtained temporary work for February through July of 1996. Currently, Plaintiff is employed approximately two days per week as an assistant at Stedman & Garger Associates in Auburn, New York, earning approximately $6.50 per hour.

Plaintiff is 54 years old, divorced and currently lives with her 19 year old son, Greg, who was described by her as a high-functioning autistic person who is dependent on her for his daily needs. Plaintiff and her son currently rent a two-bedroom apartment with a monthly rent of $468, of which she is responsible for $132 based upon her qualification for the Section 8 housing assistance program. Other expenses include: food, $250/month; utilities, $149/month; transportation, $60/month; auto insurance, $54/month; life insurance, $29/month; telephone, $40/month; cable television, $24.69/month; and newspapers, $9.40/month. Plaintiff currently does not have medical insurance, though she suffers from fibrocystic breast disease, Minere's disease and degenerative disc disease, and pays approximately $40 per month for related prescriptions.

Plaintiff receives $80 per month in child support for her son Greg. Additional support for Greg comes in the form of Social Security payments in the amount of $459 per month, which Plaintiff applies to their living expenses. Income that Greg earns from his work as a janitor is used for his clothing and personal spending money.

---

1. The parties to this action entered into a Partial Stipulation of Facts, dated October 9, 1996 ("Stipulation"). According to the Stipulation, Plaintiff applied for and received four student loans from Cayuga Savings Bank in the total principal amount of $13,210. Pursuant to a guarantee agreement, Defendant later purchased these loans from Cayuga Savings Bank. According to ¶ 13 of the Stipulation, however, the principal amount due to Defendant is $17,567.98. At no place in the Stipulation is this disparity addressed.

Plaintiff claims that repayment of the student loan debts would impose an undue hardship on herself and her son. She claims that she lacks sufficient income to repay the loans, that her financial circumstances are unlikely to change, and that she made good faith efforts to make payment on the loans.

In opposition, Defendant argues that although Debtor's monthly income barely exceeds expenses, she did not make a good faith effort to repay the loans, nor has she demonstrated such exceptional circumstances which would indicate that her current inability to pay will continue for a significant portion of the repayment period. In support of this argument, Defendant indicates that Plaintiff is not prevented from working by her disabilities, that Plaintiff has not shown how taking care of her son will prevent her from repaying the loans, and that she has not proven that she has no useable job skills which would assist her in repayment of the loans. Therefore, Defendant argues that discharge should be denied.

### DISCUSSION

The effect of Code § 523(a)(8) is to make student loan debts presumptively nondischargeable until a complaint is filed to determine whether dischargeability is proper under either of the two exceptions listed in this section. *See Law v. Educational Resources Institute, Inc. (In re Law),* 159 B.R. 287, 291 (Bankr.D.S.D.1993). Code § 523(a)(8) is self-executing, and thus the burden is on the debtor to initiate a proceeding to determine the dischargeability of the debt. *See United States v. Wood,* 925 F.2d 1580, 1583 (7th Cir.1991); *Buford v. Higher Educ. Assistance Foundation,* 85 B.R. 579, 582 (D.Kan.1988). A creditor is under no obligation to file a complaint to determine whether its debt is nondischargeable. *See Wood,* 925 F.2d at 1583; *Fitzgerald v. Pennsylvania Higher Educ. Assistance Agency (In re Fitzgerald),* 40 B.R. 528, 529 (Bankr. E.D.Pa.1984); S.Rep. No. 989, 95th Cong., 2d Sess. 79, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865 ("This provision is intended to be

self-executing and the lender or institution is not required to file a complaint to determine the nondischargeability of any student loan").

Plaintiff in this case relies on Code § 523(a)(8)(B), which provides that a student loan debt which first became due seven or less years before the petition in bankruptcy was filed will not be discharged, unless disallowing such discharge will impose an undue hardship on the debtor and his or her dependents. 11 U.S.C. § 523(a)(8)(B). One of the purposes of this section was to remedy abuse by students who would file for bankruptcy relief immediately upon graduation in order to obtain a discharge of their educational loans. *See Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman),* 25 F.3d 356, 359 (6th Cir.1994), *cert. denied,* 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995); *Andrews Univ. v. Merchant (In re Merchant),* 958 F.2d 738, 740 (6th Cir.1992). Since student loan debts are presumptively nondischargeable, and therefore the debtor bears the burden of proof to demonstrate undue hardship, *see Mayes v. Oklahoma State Regents for Higher Educ. (In re Mayes),* 183 B.R. 261, 263 (Bankr.E.D.Okla. 1995), it is clear that Code § 523(a)(8)(B) represents an intent by Congress to override the acknowledged "fresh start" purpose of bankruptcy. *Johnson v. Edinboro State College,* 728 F.2d 163, 164 (3d Cir.1984).

The burden on the debtor to prove undue hardship is substantial. Only upon a showing of exigent or exceptional long-term circumstances which are beyond the control of the debtor, and which prevent the repayment of the student loan, will the Bankruptcy Court find an undue hardship warranting a discharge. *Coleman v. Higher Educ. Assistance Found. (In re Coleman),* 98 B.R. 443, 454 (Bankr.S.D.Ind.1989). The Bankruptcy Court must also consider the policy and effect on the student loan program prior to discharging an otherwise nondischargeable debt. *See id.* The logic behind such a strict standard was explained by the District Court in *Brunner v. New York Higher Education Services Corp. (In re Brunner),* 46 B.R. 752 (S.D.N.Y.1985).[2] In the decision, Judge

---

**2.** This decision was subsequently affirmed in *Brunner v. New York State Higher Educ. Servs.*

*Corp.,* 831 F.2d 395 (2nd Cir.1987).

Haight noted that the government (as guarantor) makes loans at a fixed rate of interest, almost without regard for creditworthiness, for the purpose of assisting students in the pursuit of an advanced education:

> In return for this largesse—and it is undeniable that guaranteed student loans have extended higher education to thousands who would otherwise have been forced to forego college or vocational training—the government exacts a *quid pro quo*. Through § 523(a)(8) it commits the student to repayment regardless of his or her subsequent economic circumstances. In return for giving aid to individuals who represent poor credit risks, it strips these individuals of the refuge of·bankruptcy in all but extreme circumstances.

*Id.* at 756.

■■■ .The determination of whether repayment of student loans would result in undue hardship is a question of fact to be determined by the court after consideration of the evidence. *See Burton v. Pennsylvania Higher Educ. Assistance Agency (In re Burton)*, 117 B.R. 167, 169 (Bankr.W.D.Pa. 1990). Generally, a chapter 7 debtor's inability to repay student loans is not a valid basis on its own to permit dischargeability. *See Strauss v. United States (In re Strauss)*, 91 B.R. 872, 874 (Bankr.E.D.Mo.1988). This is because mere financial adversity is the basis for all petitions in bankruptcy. *See Phelps v. Hemar Ins. Corp. (In re Phelps)*, 180 B.R. 27, 27 · (Bankr.D.R.I.1995) (citing *United States v. Brown (In re Brown)*, 18 B.R. 219, 222 (Bankr.D.Kan.1982)). Instead, the debtor's grounds for claiming hardship must be long term in nature, such that the present financial conditions are shown to be likely to continue for a significant portion of the repayment period. *See In re Roberson,·*999 F.2d 1132, 1135–36 (7th Cir.1993); *Medeiros v. Florida Dept. of Educ. (In re Medeiros)*, 86 B.R. 284, 286 (Bankr.M.D.Fla.1988), *see also Burton*, 117 B.R. at 169 (stating that more than present inability to pay is re-

quired to establish undue hardship). In addition, there must be an extraordinary situation with a certainty of hopelessness as to any possibility· of repayment for the indefinite future. *See Keilig v. Massachusetts Higher Educ. Assistance Corp. (In re LaFlamme)*, 188 B.R. 867, 870 (Bankr.D.N.H. 1995);· *Lezer v. New York State Higher Educ. Servs. Corp. (In re Lezer)*, 21 B.R. 783, 788 (Bankr.N.D.N.Y.1982). Mere inconvenience, austere budget, financial difficulty and inadequate present employment are not grounds for discharging educational debts under Code § 523(a)(8)(B). *Nichols v.·Regents of Univ. of California (In re Nichols)*, 15 B.R. 208, 209 (Bankr.D.Me.1981).

■■ In the Second Circuit, the standard for determining hardship was established in *Brunner v. New York Higher Education Services Corp.*, 831 F.2d 395 (2d Cir.1987), which adopted a three-prong test from the District Court· below which required the debtor to show: (1) that she cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if required to repay the student loans; (2) that additional circumstances exist indicating that such situation is likely to continue for a significant portion of the repayment period; and (3) that she has made good faith efforts to repay the loans. *Id.* at 396. All three parts of this test must be satisfied individually before a student loan debt can be discharged. *See Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996). If any one of the prongs is not satisfied· by the debtor, the Bankruptcy Court's inquiry must terminate with a finding of nondischargeability. *See id; Roberson*, 999 F.2d at 1135.

■■ An examination of Plaintiff's financial condition under the first prong of·*Brunner* reveals that balancing income and expenses[3] for her household is clearly difficult,

---

**3.** Debtor testified at trial that she works approximately eight days per month earning $6.50 per hour. Calculating her earnings based on·a seven-hour work day yields gross income of $364 per month. Adding to this estimated figure the $80 per month she receives in child support as

well as the $459 per month received from Social Security for the support of her dependent son results in an approximate monthly income of $903. Monthly expenses as provided by Debtor amount to $788.09, which is composed of the following: rent, $132; food, $250; utilities,

although there appears to be some room for rebudgeting, and thus it is not obvious that Plaintiff will be unable to maintain a minimal standard of living for herself and her dependent son if required to repay her student loans.

It is the second prong of the *Brunner* test, however, that dispositively resolves the case *sub judice.* Even assuming that Plaintiff is currently unable both to meet her monthly expenses and pay off her student loans, this alone is not enough to support a finding that failure to discharge her loans will result in an undue hardship being imposed. *Brunner,* 46 B.R. at 757–58. She must also present additional circumstances which demonstrate that her strained financial condition is likely to continue for a significant portion of the repayment period.

Plaintiff presented no evidence which would indicate that her son's condition would prevent her from maintaining full-time employment. In fact, her son is gainfully employed outside of the home and earns his own spending money. Likewise, Plaintiff's own medical conditions, while no doubt a hindrance, do not prevent her from working, according to her testimony. While she has come upon difficulties in obtaining full-time work during the past 20 months, she is clearly skilled and employable. In fact, just two months after filing her bankruptcy petition in January 1990, Plaintiff obtained a full-time job at Metropolitan Life Insurance, which she held for five years before the position was eliminated due to downsizing. Since that time, she has been able to locate only temporary and part-time work, although she has admittedly limited her job search to the local area surrounding her home despite ownership of an automobile, and thus a further extension of her job search may result in greater opportunities. Furthermore, Plaintiff obtained a high score on a Civil Service examination and is currently awaiting job opportunities in government employment. Therefore, it cannot be said that all hope is lost that she will be able to find gainful full-time employment in the future, especially since she was steadily employed

for five years prior to her present employment difficulties. *See Briscoe v. Bank of New York (In re Briscoe),* 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981) ("[T]he dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment").

■ Plaintiff has also argued that she has been unable to find work requiring the skills for which she went to school, which include secretarial and word processing skills, apparently indicating that she has not received the benefit of her indebtedness. There are no guarantees, however, that upon completion of courses designed to further one's education, a student will be employed in her chosen field of study. An education bestows knowledge and opportunity, and not necessarily a specific employment. The government is not an insurer of employment merely because it provides low-cost financing to students. Therefore, any argument that Plaintiff has not directly benefitted from her education and therefore should be granted a discharge of her student loans is unpersuasive. *See Faish,* 72 F.3d at 306–07 (rejecting claim by debtor that inability to find job in chosen field merits discharge of student loans); *see also Roberson,* 999 F.2d at 1136 ("Congress' decision to increase the availability of higher education through student loans does not necessarily equate to a decision to insure the future success of each student taking advantage of that opportunity"); *Brunner,* 46 B.R. at 757–58 (finding that although debtor was unable to find work in chosen field, she failed to show she could not find work of any other type, and discharge was denied).

■ Plaintiff's failure to meet her burden under the second prong of Brunner renders examination of the third prong unnecessary, since failure of any part of the Brunner test renders the debts nondischargeable. *See Roberson,* 999 F.2d at 1135. Although Plaintiff's student loan debts are nondischargeable, the Court has discretion to consider the extent to which they are nondischargeable. *See Fox v. Student Loan Mkg.*

$149; transportation, $60; car insurance, $54; life insurance, $29; telephone, $40; cable televi-

sion, $24.69; prescriptions, $40; and newspapers, $9.40.

*Assoc. (In re Fox)*, 189 B.R. 115, 120 (Bankr. N.D.Ohio 1995); *Woyame v. Career Educ. & Management (In re Woyame)*, 161 B.R. 198, 203 (Bankr.N.D.Ohio 1993). It is clear that Plaintiff is currently financially ·incapable of paying the monthly payments in excess of $200 as requested by the New York State Higher Education Services Corporation. Partial discharge of the total amount due is an appropriate remedy in light of Plaintiff's financial distress. *See Fox*, 189 B.R. at 120; *Raimondo v. New York State Higher Educ. Servs. Corp. (In re Raimondo)*, 183 B.R. 677, 681 (Bankr.W.D.N.Y.1995). Authority for reducing· the total amount of indebtedness arises from an interpretation of Code § 523(a)(8)(B) which permits discharge ˊ of that portion of the indebtedness which constitutes an undue hardship, but holds the debtor responsible for the amount up to that limit of hardship. *Raimondo,* ·183 B.R. at 681; *see also Woyame,* 161 B.R. at 203 (discharging portion of student loans because it constituted an undue hardship).

As indicated above, Plaintiff's situation is far from hopeless, and based on her current employment situation, there is room in her weekly schedule to permit additional part-time work which would increase her income. In addition, Plaintiff's current budget does present some room for economizing. Based upon a review of Plaintiff's budget and current situation, the Court finds that Plaintiff can repay $5,000 of the total amount of her debts without undue hardship. This repayment shall consist of ˈmonthly payments in the amount of $25 for six months commencing January 25, 1997, and $45 per month thereafter for approximately nine and one-half years, or until the total amount of $5,000 is fully repaid. No interest shall accrue on this debt unless Defendant does not receive the above-scheduled payments within fifteen (15) days of the due date, thereby resulting in default, in which instance interest shall accrue at the rate of nine percent (9%) per annum on the unpaid balance until the missing payment or payments are brought current. *See Muto v. Sallie Mae (In re Muto)*, Ch. 7 Case No. 94–62735, Adv. No. 94–70184, slip op. at 15 (Bankr.N.D.N.Y. Feb. 13, 1996).

Based on the foregoing, it is hereby

ORDERED that the relief sought in the Complaint herein as against Defendant is denied to the extent of $5,000 as set forth above, which amount is deemed to be nondischargeable , pursuant to Code § 523(a)(8); and it is further

ORDERED that repayment of the student loans shall consist of monthly payments in the amount of $25 for six months commencing January 25, 1997, and thereafter the monthly payments shall increase to $45 per month and continue until the total balance of $5,000 is repaid.