**In re Christine ARMESTO, Debtor.**

**Christine Armesto, Plaintiff,**

**v.**

**New York State Higher Education Services Corporation, Defendant.**

**Bankruptcy No. 02–10445. Adversary No. 02–1087 B.**

United States Bankruptcy Court, W.D. New York.

Aug. 21, 2003.

Jordan, Ieraci & Stevanovic, John K. Jordan, Esq., of counsel, Amherst, NY, for Plaintiff.

Cheryl B. Fisher, Esq., Office of Counsel–EFMC, Albany, NY, for Defendant.

CARL L. BUCKI, Bankruptcy Judge.

This case presents the issue of how ownership of an exempt asset will impact the determination of whether the repayment of student loans creates an undue hardship for a debtor.

From 1970 to 1974, Christine Armesto borrowed $5,750 to finance her attendance at Villa Maria College and SUNY College at Buffalo. The outstanding loan balances totaled $5,891.48 as of March 8, 1976, when the New York State Higher Education Services Corporation ("NYSHESC") acquired the loans pursuant to its statutory guarantee. In the more than two decades

since that event, Ms. Armesto has paid $3,384.81 on account of this obligation. With the accumulation of interest, however, her indebtedness grew to $20,232.02 as of February 7, 2003.

Christine Armesto filed a petition for relief under chapter 7 of the Bankruptcy Code in January of 2002, and in due course, received an Order of Discharge. On schedules submitted with her petition, Armesto listed NYSHESC as her largest creditor. To resolve the dischargeability of the student loan obligation, Armesto commenced the present adversary proceeding. After completion of discovery, the matter proceeded to trial.

When she filed her bankruptcy petition, Christine Armesto owned no real property and with one exception, possessed no other assets that a trustee was likely to administer. The one exception was a tort claim for personal injuries that the debtor had sustained from an accident in May of 2001. Ultimately, the chapter 7 trustee settled this claim for $15,000, of which $7,500 was returned to the debtor on account of her exemption for this amount. *See* N.Y. DEBTOR AND CREDITOR LAW § 282 sub.3 (McKinney 2001). In considering the debtor's complaint, the court invited and has received briefs regarding the obligation to contribute some portion of the exempt recovery as a condition for a discharge of the student loans.

■ Section 523(a)(8) of the Bankruptcy Code provides that an order of discharge will not discharge an individual from any debt

for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

In the Second Circuit, the standard for undue hardship is that which the Court of Appeal adopted in *Brunner v. New York State Higher Education Services,* 831 F.2d 395 (1987). As stated in this decision, undue hardship requires a three-part showing: "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." 831 F.2d at 396.

■ But for the possible impact of the personal injury recovery, Christine Armesto has established, by a preponderance of the evidence, that repayment of her student loans would impose an undue hardship. Presently, she is self-employed as a preparer of professional resumes. At trial, Armesto testified that after payment of business expenses, she derives a net income of approximately $500 per month. Unmarried, she lives by herself in an apartment for which she pays rent of $300 per month plus gas and electric charges. Her average monthly telephone bill is $40. The debtor seldom eats out, and devotes essentially all of her remaining income to food and to operating a seventeen year old automobile. In the view of this court, a minimal standard of living would incorporate the procurement of basic health insurance. Here, the debtor cannot afford medical insurance, and despite health problems, has not visited a physician during the last three or four years. With respect to the first prong of the Brunner standard, therefore, the court is satisfied

that Ms. Armesto cannot presently maintain a minimal standard of living, even without any payment on account of her student loan.

■ The second prong of the *Brunner* test asks whether the debtor's present state of affairs is likely to persist for a significant portion of the repayment period. Here, the normal repayment period has long transpired, in as much as the debtor completed her education in 1976. Even if one were to consider her ability to repay prospectively from the present moment, the debtor exhibits no future likelihood for repayment without compromise of her minimal standard of living. Armesto testified that she suffers from agoraphobia and that this condition precludes the pursuit of a more lucrative source of income. Indeed, the debtor's work history confirms the persistent consequence of this problem. Despite her Bachelor of Arts in English, the debtor's own resume indicates a series of jobs providing compensation of less than $1,000 per month. Meanwhile, as the proprietor of her own modest business, the debtor has witnessed a gradual decline of both gross and net income since 1998. This long history of consistently limited income demonstrates adequately the improbability of any future ability to repay the student loans.

■ Thirdly, *Brunner* requires a showing of good faith. The parties have stipulated that on account of her educational loans, Ms. Armesto has paid $3,384.81, an amount equal to more than 58 percent of her original borrowing. The evidence shows that the debtor correctly attributes her default to a lack of income. Insufficiency of income is certainly no basis of bad faith. Rather, in the context of a paucity of resources, Armesto's payments demonstrate a sufficient level of *bona fides*.

The debtor's circumstances generally represent that uncommon situation in which repayment of a student loan would constitute an undue hardship under the standard of *Brunner*. The only possible limitation on this conclusion is the impact of Armesto's post-petition recovery on account of her personal injury.

■ The exempt character of an asset does not necessarily preempt its relevance to a hardship evaluation. Even though New York's exemption law might preclude the recovery of NYSHESC's judgment from an exempt asset, the debtor's access to that exempt asset may nonetheless allow payment without any undue hardship to the debtor. In evaluating the hardship of payment, bankruptcy courts have required the use of exempt income. *E.g. In re Wetzel*, 213 B.R. 220 (Bankr.N.D.N.Y. 1996); *In re Kraft*, 161 B.R. 82 (Bankr. W.D.N.Y.1993). Similarly, the availability of an exempt asset may allow for payment without recourse to income needed to maintain the debtor's minimal standard of living. For example, New York allows an unlimited exemption for certain pension funds, N.Y. DEBTOR AND CREDITOR LAW § 282 sub.2(e) (McKinney 2001), and for certain types of life insurance, N.Y. DEBTOR AND CREDITOR LAW § 282 and N.Y. INSURANCE LAW § 3212(b) (McKinney 2000); *see In re Trautman*, 296 B.R. 651 (Bankr. W.D.N.Y.2003). Despite a current income of modest proportions, a particular debtor may possess exempt assets from which he or she might satisfy a student loan without impairment of life style. This possibility, however, depends upon the unique circumstance of each debtor. For some debtors, the forfeiture of an exempt asset may exacerbate a situation of undue hardship. In that event, the existence of an exempt asset will not preclude the discharge of an educational loan.

Nothing in section 523 of the Bankruptcy Code requires a forfeiture of every asset as a precondition for discharge of a student loan. Nonetheless, the ownership of such assets may impact the level of income needed both to repay a student loan and to maintain a minimum standard of liming. Notwithstanding either the absence or the availability of an exempt asset, the dischargeability of a student loan will always depend upon the same fundamental issue, namely whether repayment of the student loan will impose an undue hardship on the debtor and her dependents. In the present instance, Christine Armesto received an extraordinary recovery of $7,500. At the time of her receipt of that money, she was unable to maintain even a minimal standard of living. Without health insurance, she had to forego treatment for her agoraphobia. Because the lump sum recovery is unlikely ever to be replicated, Ms. Armesto could properly budget this money to supplement her income over a reasonable period of time. Even as supplemented by a fair monthly allocation of the tort recovery, the debtor's income remains inadequate to assure a minimal standard of living. By a preponderance of the evidence, this court finds that the debtor lacks sufficient resources and income to pay her student loans without undue hardship. Accordingly, the debtor will be granted judgment determining that her student loans are fully dischargeable.

So ordered.