**In re Maureen R. DAVIS, Debtor.**

**Maureen R. Davis, Plaintiff,**

**v.**

**Educational Credit Management Corporation, Defendant.**

**Bankruptcy No. 03–16085 B. Adversary No. 03–1294 B.**

United States Bankruptcy Court, W.D. New York.

Jan. 17, 2006.

Spoto, Slater & Sirwatka, Kevin J. Sirwatka, of counsel, Jamestown, NY, for Plaintiff.

Damon & Morey LLP, Stephen M. O'Neill, of counsel, Buffalo, NY, for Defendant.

## DECISION & ORDER

CARL L. BUCKI, Bankruptcy Judge.

Contending that repayment of her student loan would impose an undue hardship, the debtor commenced the present adversary proceeding for a declaration that that loan is dischargeable. The central issue of this dispute involves the extent to which a determination of hardship should depend not only upon the income of the debtor, but upon the resources of her non-debtor spouse.

Maureen R. Davis, the debtor herein, graduated with a Bachelor of Arts degree from the State University of New York at Fredonia in 1989. To finance that education, she received a series of student loans in the combined amount of approximately $9,000. On April 5, 1995, Mrs. Davis consolidated these loans and any accrued interest into a single obligation with an original principal balance of $11,031.48. In 1998, this obligation was assigned to its current holder, Educational Credit Management Corporation ("ECMC"). As of December 2, 2004, this consolidated loan had an outstanding balance of $29,925.96, which sum included principal, interest, and collection costs and fees. At this time, Mrs. Davis continues to incur interest charges of $5.33 per day or approximately $1,945 per year.

The present bankruptcy proceeding is the second that Maureen Davis has filed. In 1997, she filed a chapter 7 petition which she then converted into a proceeding under chapter 13. As the only creditor to file a claim in that case, ECMC received a distribution of ten percent of its claim pursuant to a plan that Mrs. Davis successfully completed in 2001. Then on August 13, 2003, Maureen Davis filed the current petition for relief under chapter 7 of the Bankruptcy Code. Having received no objection from either the trustee or creditors, this court granted an order of discharge on December 9, 2003. Meanwhile, on November 5, 2003, Maureen Davis commenced the present adversary proceeding to determine the dischargeability of her obligation to ECMC.

In her complaint, Maureen Davis alleges that she holds no assets which may be used to repay her student loan, and that she lacks sufficient income to repay the loan at any time in the future. Asserting that repayment would impose an undue hardship, she asks that the court find the loan to be dischargeable under section 523(a)(8) of the Bankruptcy Code. In its answer, ECMC primarily contends that Davis cannot satisfy the applicable test for hardship as stated by the Court of Appeals in *Brunner v. New York State Higher Education*, 831 F.2d 395 (2nd Cir.1987). Upon the completion of discovery, the parties duly presented their respective positions at trial.

Maureen R. Davis is presently 46 years of age. She married her husband, Dale K.

Davis, on May 7, 1994. They have no dependents, and reside together in a house that Dale Davis owns in his own name. At trial, Mrs. Davis described the house as a "handyman special" that is falling apart and that "needs help." Built in 1819, the building was partially remodeled in 1957. According to Mrs. Davis, the house has serious structural problems, including deficiencies in the heating and plumbing systems. The Davises have mostly furnished their house with used items having little or no resale value. Both Mr. and Mrs. Davis drive modest automobiles, one of which is more than fifteen years old. Neither car appears to have any non-exempt value in excess of outstanding liens. Through his cross examination of Mrs. Davis, counsel for ECMC effectively questioned the wisdom of many of the purchasing decisions that the debtor and her husband have made. Nonetheless, the evidence clearly shows that Mr. and Mrs. Davis have lived without extravagance.

Mrs. Davis testified that she maintained a small investment account, which had a value of $757.79 as of the day of trial. Otherwise, she owns no liquid assets from which she might pay her educational loan. Nor does she possess any other property that she could liquidate for any meaningful sum of money. Thus, any further payment in excess of savings can only derive from future wages or from a non-obligor, such as the debtor's husband. At the present time, Maureen Davis works as an activities aide in a nursing home, where she earns a gross income of approximately $8,000 per year. Meanwhile, her husband earns a gross income of approximately $21,000 per year as a clerk at the Department of Motor Vehicles for Chautauqua County.

■ Section 523(a)(8) of the Bankruptcy Code provides that an order of discharge under chapter 7 will not operate to discharge an educational loan unless repayment would "impose an undue hardship on the debtor and the debtor's dependents." In the Second Circuit, the Court of Appeals has adopted "a standard for 'undue hardship' requiring a three-part showing: (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." *Brunner v. New York State Higher Educ. Services,* 831 F.2d 395, 396 (2nd Cir.1987).

For the following reasons, Maureen Davis would satisfy the standard of *Brunner,* if one were to consider only her own income and resources, without contribution from her husband:

■ 1. Current Income: Without objection from the debtor, the court granted ECMC's request to take judicial notice of self-sufficiency standards issued by the Bureau of Labor Statistics of the United States Department of Labor. For a single individual living in the county of the debtor's residence in 2004, the Bureau calculated a self-sufficiency wage of $1,215 per month, or $14,580 per year. With an annual income approximating only $8,000, Mrs. Davis would herself lack the income needed to maintain self-sufficiency. Accordingly, if she were the only wage earner in her household, the court would find that she could not now maintain a "minimal" standard of living if forced to repay the student loan.

■ 2. Likely Persistence of Current Conditions: In earning her bachelor of arts degree, Mrs. Davis majored in sociolo-

gy with concentrations in social work and gerontology. At the trial, she described extensive efforts on her part to secure employment within her fields of study. Notwithstanding these efforts, she has had great difficulty finding any employment and has instead been compelled to accept a series of jobs paying little more than minimum wage. Moreover, her periods of employment were often interspersed by long stints of unemployment. Now that more than fifteen years have passed since her graduation from college, Mrs. Davis reasonably anticipates little prospect for enhanced earnings. Since 2002, she has also received medical treatment for depression, a condition that has further limited her ability to accept more challenging employment. Based upon all of the proof, I must accept the debtor's position that she is unlikely to find a job paying significantly more than her present position, and almost certainly will never earn more than a subsistence level of income.

3. Good Faith: When a party consistently earns less than a subsistence income, good faith will not require a history of payments totaling a significant percentage of the loan obligation. Rather, it suffices to show that the debtor made an affordable level of payments over a meaningful period of time. Here, the debtor completed a chapter 13 plan in which she paid her entire disposable income to a trustee whose only distributions were made on account of the educational loan. In her testimony, Mrs. Davis described significant personal sacrifices that she made to effect the payments on her chapter 13 plan. Based upon all of the evidence presented, I would find that Maureen Davis has adequately demonstrated a good faith effort to repay her student loan.

Although repayment of the student loan would impose an undue hardship if Maureen Davis was living on her personal in-come only, she instead resides with a spouse who is himself gainfully employed. Dale Davis presently earns approximately $21,000 per year, so that the household realizes an annual income of approximately $29,000. Without objection, ECMC showed that for two adults living in the county of the debtor's residence in 2004, the Bureau of Labor Statistics has calculated a self-sufficiency wage of $1,899.00 per month, or $22,788 per year. Thus, the household unit would appear to receive wages that are at least $6,000 more than a self-sufficiency income. ECMC contends that this excess would allow payment of Maureen Davis's student loan over a reasonable period of time and without imposition of an undue hardship. The debtor responds that her husband has no liability on the loan and that this court cannot compel him to pay on its account. Rather, the debtor believes that she is obligated to contribute fairly to household expenses, and that any such fair contribution would leave no resources from which to pay the student loan.

The present dispute involves a special problem, in that the facts are fundamentally different than those considered by the court in *Brunner v. New York State Higher Educ. Services*. In *Brunner*, the debtor herself provided the only source of household income to repay the educational loans. In the present instance, the majority of family income derives from wages earned by a non-obligor spouse. With respect to the first prong of the *Brunner* test, Maureen Davis's own income provides no easy guidance to the ultimate question of whether repayment would impose an undue hardship upon her household.

In suggesting a standard that will address the present facts, the court must appreciate the myriad of financial circumstances that might surround the obligor of an educational loan. The present instance

involves a debtor living with her gainfully employed spouse. But in a different case, a minimally employed debtor might reside with parents, siblings, or friends. Should discharge depend upon total household income, when a discharge of educational loans is allowed to a similarly employed and employable debtor who lives alone? Alternatively, should the court deny a discharge because a debtor could have chosen to return to the parental abode? To what extent should the court ever consider the prospects for a marriage that might place the debtor into a household where repayment of the student loan would impose a more manageable financial burden?

 I need not now consider the consequences of substantial earnings by a non-debtor spouse. Although their combined wages exceed the standard for self-sufficiency, Mr. and Mrs. Davis still receive incomes that would allow only a modest standard of living. In this instance, Maureen Davis may reasonably dedicate most of her income to the needs of the household. This is not to say, however, that this court should discharge the educational loan in full. For the reasons stated in my decision in *In re Raimondo,* 183 B.R. 677, 681 (Bankr.W.D.N.Y.1995), section 523(a)(8) of the Bankruptcy Code "permits the discharge, on a pro rata basis, of only that portion of the outstanding educational indebtedness which exceeds an amount that the debtor can pay without undue hardship." Here, where the debtor herself earns less than a self-sufficiency income, the limits of undue hardship can only be determined by all of the circumstances of this case.

Maureen Davis will likely never earn a significantly greater income than what she presently receives. As a practical consideration, ECMC possesses the ability to collect only a small portion of the balance due on the educational loan. The only

asset that would be subject to immediate attachment is a small investment account of approximately $750. Otherwise, New York allows an income execution against only ten percent of wages. N.Y. C.P.L.R. § 5205(d)(2) (McKinney 1997). With annual earnings of approximately $8,000, Mrs. Davis could be compelled to pay no more than about $800 per year from her current income. She is also now 46 years of age and has accrued no pension rights other than social security. Under special circumstances, educational loans may be recovered by way of offset against social security payments. *Lockhart v. United States,* —— U.S. ——, 126 S.Ct. 699, 163 L.Ed.2d 557 (2005). This right of offset, however, is subject to a general exemption for the first $9,000 of benefits received during any twelve month period. 31 U.S.C. § 3716(c)(3)(A)(ii). Essentially, therefore, ECMC could compel payment of Mrs. Davis's student loan only to the extent of approximately $750 today and approximately $800 per year until the debtor retires. Notably, these payments would represent less than half of the current accrual of interest.

From all foreseeable perspectives, Maureen Davis will never repay her educational loan in full. Even if ECMC were to garnish her wages to the full extent allowed by law, the loan will negatively amortize, and she will retire with an even greater liability than she now owes. In the present instance, hardship derives from the fact that the debtor finds herself in a position from which it is impossible to extricate. For this reason, the loan should be discharged except to the extent that ECMC could compel payment.

For purposes of calculating the non-dischargeable balance of the educational loan, I will assume that Mrs. Davis will likely work about 20 more years, until she becomes eligible for full social security bene-

fits. Her educational loan presently accrues interest at the rate of nine percent per annum. At that rate, payments of $800 per year for 20 years would fully amortize a loan of approximately $7,400. In addition, ECMC could attach the debtor's investment account of approximately $750. In my view, therefore, no undue hardship would arise from repayment of the total sum of $8,150. Accordingly, this amount will be treated as non-dischargeable, and the remainder of the outstanding loan will be discharged.

Although the present facts are distinguishable from those in *Brunner*, the outcome corresponds with that authority. The first prong of the *Brunner* test requires that the debtor show that she "cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents *if forced to repay the loans*." 831 F.2d at 396 (emphasis added). Under applicable law, however, Mrs. Davis cannot foreseeably be compelled to pay a sum greater than this opinion will direct. Consistent with *Brunner*, the court requires Mrs. Davis to pay all that applicable law could force her to repay.

█ Notwithstanding the limits of collectibility under New York law, I would not allow the discharge of a student loan where the debtor could reasonably satisfy that obligation from her household's projected disposable income, as defined by 11 U.S.C. § 1325 for purposes of confirmation of a chapter 13 plan. Here, the evidence shows no such disposable income that would compel payment in excess of the amount that I have determined to be non-dischargeable. Indeed, the reasonableness of my present decision is confirmed by the chapter 13 plan that Maureen Davis com-

pleted in 2001. In that plan, Mrs. Davis paid to the trustee her entire disposable income of $64 per month. This sum closely approximates the annual payment of $800 that I have incorporated into my calculation of the non-dischargeable balance of the educational loan.

For the reasons stated herein, this court will grant judgment declaring that the debtor's educational loan owed to ECMC is discharged, except to the extent of the principal sum of $8,150. Interest on this amount may continue to accrue at the contract rate of nine percent from the date of this decision.

So ordered.